## JOHN WEIDEMEYER, Appellant, v. J. G. WOODRUM, Respondent.

### Kansas City, Court of Appeals, March 3, 1913.

1. **REAL ESTATE BROKER: Duties: Right to Commission.** Where a landowner, desiring to exchange his farm lands in another State, is informed by the agent that the latter is working for a land company in such State trying to sell lands it has for sale, and the landowner tells him that, if he obtains ·a trade out there which he can accept, he will pay him in addition to what the company pays, and the agent either through his own efforts, or by working through the land company and in conjunction with ·it, secures the landowner a trade for land which the company had for sale, the agent is entitled to his pay. In such case he has earned his commission by bringing the landowner and the land company together so that through the company a trade was obtained.

2. ———: ———: ———: **Abandoning Efforts.** Where the agent has done all that he can do and has enabled the landowner to secure a trade but the agent does not know it because the matter has been kept from him, a letter written after the contract of trade was made but before the deeds were made, saying there was "nothing to" the land company but which letter did not injure the trade in the least, is not an abandonment of effort on the part of the agent such as will bar his right to recover.

3. ———: **Instructions.** It is error to instruct the jury that if the trade was made solely by another agent and defendant has paid him plaintiff cannot recover. First, because the evidence doesn't show it was made solely by such other. Second, the payment of the other agent has nothing to do with plaintiff's right to a commission and is always misleading to a jury.

4. ———: ———. Matters which are not in dispute but which are admitted ought not to be submitted to the jury as among the things it must find before returning a verdict for plaintiff. And to tell the jury that the burden is on plaintiff to establish such admitted fact makes the submission of such admitted fact more prejudicial.

5. **CORPORATIONS: Officer of: Acting in Official or Personal Capacity.** A president of a corporation engaged with plaintiff in selling land cannot, by a mere secret, unrevealed, intangible thought in his own mind, change his efforts from an official to an individual capacity so as to prevent it being the act of the corporation.

6. ———: **Right to a Judgment.** Where one of the links in plaintiff's chain of facts essential to recovery is in dispute, the appellate court cannot reverse the case and order judgment entered in plaintiff's favor but must remand it for submission to another jury.

Appeal from Boone Circuit Court.—*Hon. D. H. Harris,* Judge.

REVERSED AND REMANDED.

*W. S. Banta, N. T. Gentry* and *W. M. Williams* for appellant.

*Harris & Finley* for respondent.

TRIMBLE, J.—Action to recover commission as a real estate broker. The jury found for defendant. Plaintiff claims the admitted facts show he should recover the amount sued for; that the jury was erroneously instructed; wherefore he asks a reversal with directions to enter judgment in his favor. Defendant contends that plaintiff must fail without regard to whether error was committed. This assertion, if well founded, disposes of the case. Hence it should be considered first. It is based upon two grounds: First, that plaintiff abandoned his efforts to effect a sale; second, that his efforts did not result in bringing about a trade. To consider these grounds satisfactorily requires a statement of the facts which are these:

Defendant owned a farm of 643 acres in Boone county, Missouri, which he desired to exchange for land in western Kansas. Plaintiff was a real estate agent living in Columbia, Mo., and was in the employ of the Garden City Land and Immigration Company, a real estate corporation at Garden City, Finney county, Kansas. The object of plaintiff's employment with the company was to assist in selling or trading lands it had for sale or trade in said county. Defendant admits that, when he told plaintiff of his desire to trade

his farm for Kansas land, plaintiff told him of the company and of his connection therewith and of the fact that the company paid him, but that they did not pay enough to make it an object to him. Defendant further admits that "I finally told him if he would get me a deal that suited me and that I would accept, I would pay him $500." Thereupon plaintiff went to Garden City, Kansas, saw Mr. McCue, president of the company, and told him of defendant's farm and his desire to exchange it for Kansas land. McCue said he thought a trade could be made and for defendant to come out to Garden City and look at the land. Plaintiff went back to Columbia and reported to defendant, who declined to go until they should first look at his land. Plaintiff then wrote the company of this, and the company's vice president, Mr. Kiff, came to Boone county and was met by the plaintiff who showed him defendant's farm. Kiff expressed himself as believing a trade could be obtained and, shortly after this, plaintiff went with defendant to the headquarters of the company at Garden City, introduced defendant to the officers of the company and told them in defendant's presence that, if a trade was secured by defendant, plaintiff was to receive $500 from him in addition to the pay he would get from the company. This last the defendant denies.

While at Garden City plaintiff showed defendant the company's maps of the various lands it had for sale or trade, and spent nine days out there showing defendant over various tracts of land.

It is in evidence that McCue was not only president of the company, but that up to April, 1911, he was practically the sole owner of the company; that the company had in charge for sale or trade an immense amount of land, some of which was owned by three men, Dutton, Clark and McCue, and some by Dutton individually; and that the company was en-

gaged in selling and attempting to sell or trade all of
said lands.

In going out from Garden City to look at land
plaintiff would frequently accompany defendant, but
sometimes Kiff and sometimes McCue would go.
But, in the nine days spent out there, all three of the
men, McCue, Kiff and plaintiff were working for the
company, and plaintiff was working for both defend-.
ant and the company. Plaintiff and defendant dis-
agree over whether any of Dutton's individual land
was shown him by plaintiff, the latter claiming he
did and the defendant insisting that Dutton's name was
never mentioned to him. Defendant contends that the
only land he had under consideration at that time was
land belonging to Clark and McCue. Whether this be
true or not the evidence shows that Dutton had an in-
terest in this Clark-McCue land, which defendant says
he looked at. At any rate a number of tracts were be-
ing favorably considered by defendant but it seems
that Clark was not willing to trade, and defendant and
McCue went to Hastings, Nebraska, to see Clark who
still declined to trade. Thereupon McCue introduced
defendant to Dutton and a contract was finally closed
between them for an exchange of defendant's farm
for some of Dutton's individual land. This contract
and exchange was made by McCue although Dutton,
before finally closing the trade, took the advice and
help of his cousin, St. Clair, who lived in Columbia.
Dutton paid McCue for his services in engineering
the deal for him. Whether defendant had been shown
any of Dutton's individual land before going to Hast-
ings or not, the negotiations between Dutton and
defendant began after they reached Hastings and
continued from that time until about January 2, when
the deal was closed. Plaintiff was not informed of
these negotiations nor of the fact that they were
being continued after he and defendant returned to
Boone county. Being in entire ignorance of the fact

that defendant had found a man out there with whom
he could acceptably trade, and believing that every-
thing connected with the Garden City Land Company
had come to naught, plaintiff, a short time before
Christmas, wrote defendant a letter in which he ex-
pressed the opinion that there was "nothing to the
Garden City Land & Immigration Company;" that
they, the company, "had nothing" and he "would'nt
work for them at any price." At the very time this
letter was written defendant had secured a deal
which he had accepted, and it was finally closed a few
days later. The letter did nothing to hamper or de-
lay the deal and was written long after plaintiff had
done all he was required to do to entitle him to a com-
mission. Because, under the peculiar undisputed facts
of this case, all plaintiff had to do was to either him-
self introduce defendant to Dutton, or to bring about a
meeting between Dutton and defendant by and through
Dutton's agent, the land company. [Veatch v. Nor-
man, 95 Mo. App. 500; Cunliff v. Hausman, 97 Mo. App.
467; Tyler v. Parr, 52 Mo. 249.] Plaintiff was working
under and for the land company who had Dutton's
lands for sale or trade. Defendant was told this and
then agreed that if plaintiff could get him a trade out
there he, defendant, would give him $500. Plaintiff
brings the land company and defendant together, and
both the company and plaintiff show defendant a
large amount of land. In this the company and plain-
tiff were working together; plaintiff, however, is by
agreement, to receive pay from defendant also. In
the midst of these efforts, and as a direct result of
them, defendant finds a deal which he can accept, but
which all parties seem to have endeavored to care-
fully conceal from plaintiff. Plaintiff has really done
what was required of him but does not know it, and
impatient at the delay, he writes this letter express-
ing his impatience. This letter had no effect whatever
on the trade, as the contract therefor had already been

signed and the trade was finally perfected a few days later. Under these circumstances his letter was not an abandonment of his agency, and he is not to be denied a recovery upon that ground.

Was it his efforts that brought about a trade? This question is really answered to some degree by what has already been said. Plaintiff's contract was not that he should find one willing to trade on terms that defendant would find acceptable and then attend to the negotiations and bring the parties safely through them to a perfected trade before being entitled to his pay. All he had to do was to bring the parties together and let them do the necessary dickering. He brought them together because he first informed defendant of the company and his connection therewith, then he went to the company and told them of defendant. By his efforts the company came to look at defendant's land and then defendant went with plaintiff to look at the lands which the company had in charge. Plaintiff says he showed defendant the actual land, or part of it, that defendant afterwards traded for. But, whether he did or not, his coworker the land company, agent of the man with whom defendant traded, did do so. If this be true, it cannot be said that his efforts were not the procuring cause of the trade. [Smith v. Truitt, 107 Mo. App. l. c. 6; Bass v. Jacobs, 63 Mo. App. l. c. 396; Jones v. Berry, 37 Mo. App. l. c. 130, and many cases there cited.]

But it is said McCue, in negotiating the contract of exchange, acted as an individual and not as president of the company. He was the practical owner of the company and was its president. He and plaintiff were both working for the company to make a trade for it as agent of Dutton. It is rather difficult to understand how he could change his exertion from an official to an individual capacity and thus defeat plaintiff of his pay, especially when such change is accomplished by noth-

ing more than a secret, unrevealed, intangible figment of thought buried deep in his own mind. Besides, he does not say so. He never testified. Dutton and defendant are the men who say the land company had nothing to do with the trade. How they know this is hard to tell. Hence it cannot be said that, regardless of error, plaintiff cannot recover. Even if it was necessary that plaintiff should disclose Dutton's name, or show Dutton's land, in order to recover, still to say that he had no right to recover, no matter what error was committed, would be to entirely disregard plaintiff's evidence that he did these things. This would be the same in effect as sustaining a demurrer to plaintiff's evidence when that evidence, if true, was sufficient to entitle him to recover. Hence we cannot say that plaintiff in no event is entitled to recover.

Defendant's instruction No. 3 told the jury that "if the trade was made solely by W. S. St. Clair and the defendant has paid him a fee therefor, then plaintiff is not entitled to recover." This was error, first because the evidence showed that the trade was not made solely by St. Clair. McCue, president of the land company, introduced them and signed Dutton's name to the contract and Dutton paid McCue for his services. It is true, St. Clair, at Dutton's request, advised him as to the farm and St. Clair's influence may have helped induce Dutton to trade, but it was not solely by reason of St. Clair's efforts. Hence there was no evidence to support such an instruction and it should not have been given. [Jones v. Grossman, 59 Mo. App. 195.]    Second, the payment of a commission to St. Clair by defendant had nothing to do with plaintiff's right to a commission, and the instruction was misleading and confusing to the jurors, who would readily infer that if St. Clair had helped at all in the trade, and defendant had paid him, then defendant ought not to be made pay again.

In the first paragraph of plaintiff's instruction No. 1, it told the jury that "it stands admitted that the defendant agreed to pay the plaintiff $500 if the plaintiff could find a purchaser who would exchange land to the defendant for the defendant's farm in Boone county." The court changed this so as to make it read "that if you find, that the defendant agreed, etc.," thus requiring the jury to find what was admitted. And in defendant's instructions the court told the jury that the burden was on the plaintiff to establish the employment for the purpose and on the terms set out in the petition. This unquestionably gave a coloring to the case prejudicial to the plaintiff. It would be all right in a case where those matters were in dispute, but not here. [Anderson v. Bradford, 102 Mo. App. 1. c. 435.] In view of the erroneous instructions above mentioned, the case is reversed and remanded for a new trial. Plaintiff insists that the case should be reversed and the trial court directed to enter a judgment for the amount sued for. We think it more in accord with justice that a new trial be had. The trial court was not asked to peremptorily instruct the jury to find for plaintiff even if such an instruction would have been proper. Again, in the submission of the case to the jury by the plaintiff one of the conditions of plaintiff's right to recover was that the jury must find that Dutton's individual land was with the land company for sale. We think the evidence sufficient to show that it was, but there was some evidence to the contrary, which requires that the case be again submitted to a jury. The case is therefore remanded for a new trial. All concur.