## Clarke v. People's Roller Mills Company.

(Decided January 20, 1925.)

### Appeal from Scott Circuit Court.

1.  Brokers—Broker Held Procuring Cause of Sale to Associate and
    Third Person Introduced by Broker.—Where broker introduced to
    owner a prospective purchaser, who in turn introduced his asso-
    ciate who was to join in purchase, and where associate procured
    third person to join him on prospective purchaser's withdrawal
    from transaction, broker as a matter of law was procuring cause
    of sale to associate and third person.
2.  Brokers—Broker Who Brought Seller and Buyer Together and
    Started but did Not Conduct Negotiations was Procuring Cause.
    —Broker who brought seller and buyer together and started nego-
    tiations was procuring cause, though he did not conduct nego-
    tiations.

LLEWELLYN F. SINCLAIR, W. E. DARRAGH and R. W.
KEENON for appellant.

BRADLEY & BARDLEY for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

Appellant Clarke is and was a real estate broker with offices in Lexington. The appellee, People's Roller Mills Company, is and was a corporation doing a flouring business in Scott county. W. H. Gatewood was its president and general manager. He sold the property of the milling company to Williams and Moore at the price of $15,000.00 cash, and this suit by Clarke against the Roller Mills Company and Gatewood was instituted in the Scott circuit court to recover of them three (3%) per cent commission as real estate broker on the amount of the sale price, Clarke claiming that he was employed by the milling company to find a purchaser, for the milling property and the inducing cause which brought the seller and buyer together and caused the sale. A jury trial resulted in a verdict for the defendant milling company, and Clarke, broker, appeals, insisting (1) that the court should have peremptorily directed the jury to find and return a verdict for him; and (2) that the instructions given by the court were prejudicially erroneous, and he prayed an appeal be granted and the judgment reversed. The amount involved is only $450.00, but as we have decided the judgment must be reversed, the appeal is granted.

In the course of the prosecution of his regular business as real estate broker Clarke was approached in Lexington by one Grace in March, 1922, and asked to get the milling company to make a price on its property, saying in substance that he and one Williams desired to purchase it if it could be had at a reasonable price. Thereupon Clarke, the broker, wrote W. H. Gatewood, president of the milling company, at Georgetown, the following letter:

"Dear Sir:

"I understand that you are the owner of a mill located on the waters of Elkhorn creek, in Scott county.

"Would you be interested in making a price on this property? If so please give the terms and your best price, as I have a buyer who wants such a property.

"I wish that you would let me know your decision in the matter at once.

"Yours truly,
"L. J. CLARKE."

On March 7th, Gatewood, as president of the roller mills company, wrote Clarke as follows:

"Dear Sir:

"In reply to your letter of Mch. 4/22 in regard to price and sale of People's Roller Mills Co., beg to advise that the mill can be bought if price is satisfactory. I will sell the property including everything except the accounts and cash on hand and wheat on hand for the sum of $20,000.00 cash, provided your commission is not too much. This price includes:

2 dwelling houses and all outbuildings,
Mill property and equipment,
All flour sacks and wheat bags,
1 Republic truck,
1 Ford truck,
1 Ford coupe,
1 Cleveland roadster.

All this property is in good shape.

"Very respt.,
"PEOPLES ROLLER MILLS CO.,
By W. H. GATEWOOD, Pres."

In answer to Gatewood's letter, Clarke, on March 11th, wrote:

"Dear Sir:

Re: Mill proposition.

"Your letter received, and have had talk with my clients, who wish to have a talk with you. We will be at your place at ten o'clock Tuesday morning.

"The buyers are interested, and want to see the mill and other equipment. We are coming prepared to do business. You asked about the commission, and I am sure it will not break you as it is only 3%.

"Very respectfully,
" L. J. CLARKE, 125 East Main St."

However, after writing the first letter Clarke drove down to the mill to see Mr. Gatewood. At that time Gatewood had not received the letter but informed Clarke that he would make him a price on the property as soon as Clarke's letter was received and Gatewood had time to think it over. As soon as Clarke received the letter from

Gatewood fixing the price, he turned the letter over to Grace, his prospective purchaser, who in turn showed it to his associate, Mr. Williams. At that time Grace and Williams expected to buy the mill together. Soon thereafter Clarke asked Grace to go with him to look at the mill and the two went down to see the property, and Grace was introduced to Gatewood by Clarke and they talked over the trade, Grace examining the mill and equipment. As they returned that afternoon Grace told Clarke he believed he and Williams would buy the mill. Grace communicated with Williams, his associate, and the two went to see the mill together and met and talked with Gatewood, president of the company. When Williams was introduced to Gatewood he asked if he were Clarke's man and was told that he was. Negotiations then proceeded. Clarke was not present. Finally Grace, who had to borrow his share of the money, decided to drop out, but Williams associated himself with Moore for the purchase of the mill, and soon thereafter bought it at the price of $15,000, the milling company reserving certain trucks and other equipment. While negotiations were pending there was some delay; and when Clarke called on Gatewood to find out how the deal was progressing, he was asked by Gatewood to see his parties and rush up the trade, Gatewood saying that he had a place to use the money at that time if the deal was to be made, and if it could not be made very soon he might lose the opportunity. Clarke agreed to hurry the matter along and did go back to Lexington, and saw Grace and Williams and urged immediate action. It will thus be seen that Clarke, as broker, was engaged by the milling company, through Gatewood, as its president, to find a purchaser for the property on a three per cent (3%) commission basis, in case of a sale, and that Clarke, through Grace, interested Williams and later Williams found Moore and the two latter purchased the property. Upon this hypothesis appellant Clarke insists that the court should have directed the jury to find and return a verdict for him for $450.00, the amount of his commission.

On the other hand, appellee milling company and Gatewood insist that they are not liable for the commission because, as they contend, Clarke was not the procuring cause of the sale. In support of this contention Gatewood testified, as did Williams also, that about a month or so before Clarke wrote his first letter to Gatewood asking the price on the milling company property,

Williams, while driving through Scott county, saw the milling property which he later bought and went in and talked to Gatewood about purchasing it, and inquired the price. There is no denial of this. Appellant Clarke insists, however, and this is admitted, that Gatewood informed Williams at that time that the mill was not for sale and declined to make a price. From this he argues that negotiations were thereupon abandoned and that he instigated the later negotiations which resulted in the sale. This is borne out by the evidence of Grace and Williams, who testified in substance that Williams approached Grace and asked him about the mill, after hearing that Grace once owned it, and told Grace that he might become interested in buying it and at that time or later solicited Grace to join him in the purchase. It was then agreed that Grace should make an effort to get a price upon the mill and he thereafter approached Clarke and induced him as broker to communicate with Gatewood, president of the milling company, and induce him to list the mill with Clarke for sale, as above recited.

The question is, did Clarke, as broker, find and present Williams the purchaser, or did the sale come about through the casual meeting of Williams and Gatewood at the mill? In addition to the admitted facts which we have recited above, it is certain from the record that Gatewood, during the negotiations, regarded Clarke as having found and presented Williams as prospective purchaser. Gatewood admits that when there was a halt in the negotiations he solicited Clarke to hurry the purchasers. The mere fact that Clarke did not conduct the negotiations is immaterial. If he brought the seller and buyer together and started the negotiations he earned his commission. The milling company engaged Clarke to do this on a three per cent (3%) basis, and he presented Grace to Gatewood, and Grace brought in his associate, Williams, who later found Moore, and thus consummated the deal.

As we view the facts there was nothing to submit to the jury. The milling company admits it accepted the services of Clarke as a broker, and that it has not paid him his commission. The trial court should, therefore, have sustained appellant Clarke's motion at the conclusion of the evidence for a directed verdict in his favor. In overruling that motion reversible error was committed. On another trial if the evidence is in substance

the same as upon the last one the court will so direct the jury.     This makes it unnecessary to consider the other questions made.

Judgment reversed for proceedings consistent here-with.