## MONTGOMERY v. EMPEY.*
### (No. 1283; Feb. 8, 1927; 253 Pac. 17.)

Brokers—Appeal and Error—Preponderance of Evidence—Recovery of Broker's Commission—Error Cured by Instruction to Disregard Evidence—Memorandum of Sale—Ratification of Broker's Act.

1. Evidence, in broker's action for commissions, on ground that she was employed to find purchaser and was procuring cause for sale, *held* for jury.

2. Supreme Court has no duty to weigh evidence, where it is conflicting.

3. Preponderance of evidence is not established solely by number of witnesses.

4. In broker's action for commissions, newspaper notices of plaintiff, offering property for sale, *held* admissible as tending to corroborate testimony that one alleged to be associated with purchaser appeared in answer thereto, as well as to show that plaintiff was endeavoring to carry out contract for sale and commission.

5. Error, if any, in receiving testimony which was entirely struck by court, with instructions that it be disregarded, was cured.

6. Original memorandum of sale and option agreement to purchase and final agreement thereof between owner and purchaser *held* properly admitted, in broker's action for commissions, on ground she was procuring cause of sale.

7. If owner, during course of negotiations for sale of property, stated to broker that she would be protected on any kind of a deal, such statement would be tantamount to ratification by him of broker's efforts and agency and would entitle her to commission.

*See Headnotes: (1) 9 CJ p. 659 n. 63. (2) 4 CJ p. 858 n. 3. (3) 23 CJ p. 20 n. 45. (4) 9 CJ p. 647 n. 11; p. 649 n. 18. (5) 4 CJ p. 990 n. 25; p. 991 n. 33. (6) 9 CJ p. 648 n. 16. (7) 9 CJ p. 561 n. 29; p. 660 n. 68; p. 661 n. 69.

APPEAL from District Court, Natrona County; R. R. Rose, Judge.

Suit by Kathlyn Montgomery against Fred E. Empey. Judgment for plaintiff, and defendant appeals.

*Curran & Cobb, John H. Casey,* and *Frank M. Perkins,* for appellant.

Broker's contracts come under the general rule of contracts; instruction numbered one is objectionable for prolixity and the assumption of facts not proven at the trial; the same objection applies to instructions numbered two, three, four, five and six, none of which are based upon issues in the case; a broker's contract must be predicated on contractural relations between himself and his principal; Lundman v. English, (Okla.) 189 p. 531; Babcock v. Merritt, (Colo.) 27 Pac. 882; Stevens v. Bailey, 42 So. 740; 9 C. J. 116. Under a general denial, plaintiff must prove contract alleged; McCorry v. Wiarda, 149 App. Div. 863, 134 N. Y. S. 667; Weinhouse v. Cronin, (Conn.) 36 A. 45; Brooks v. Ass'n., (Utah) 178 p. 589. A broker must be the procuring cause of a sale, in order to recover commission; Wheelan v. Hunt, (Okla.) 133 p. 52. Merely contributing toward the sale does not constitute the broker a procuring cause; Alden v. Earl, 121 N. Y. 686; Crane v. Miles, (Mo. Ap.) 134 S. W. 32; Lord v. Co., 118 N. Y. S. 451; Sexton v. Goodrich, 131 Wis. 146; Rosenfield v. Wall, 109 A. 409; Earp v. Cummings, 93 Am. Dec. 719; 19 Cyc. 261. Procuring cause, means the original discovery of purchaser, starting negotiations, and formal closing of sale on behalf of the principal; Langford v. Issenhuth, (S. D.) 134 N. W. 889; Wood v. Smith, (Mich.) 127 N. W. 277; Shober v. Dean, (Mont.) 102 p. 323; Sibbald v. Co., 83 N. Y. 378. Services rendered gratuitously renders a subsequent promise to pay for them not binding; Allen v. Bryson, 67 Ia. 591, 56 Am. Rep. 358. Finding that an agent was instrumental in causing the sale would not, of itself, entitle him to com-

mission; Kurtz v. Payne, (Ia.) 135 N. W. 1075; Bowers
v. Mills, 157 Ill. App. 171. Broker must bring the minds
of the purchaser and vendor to an agreement; Naylor v.
Ashton, 130 Pac. 181; Williams Co. v. Kane, 116 N. Y. S.
155. Plaintiff did not have exclusive sale of the property;
the owner made the sale without the aid of plaintiff,
hence broker was not entitled to commission; Stewart v.
Murray, (Ind. 47 Am. R. 167; Shober v. Blackford,
(Mont.) 127 p. 329. It is only where an exclusive agency
is granted that principal is liable when he makes sale on
his own account; Hunter v. Co., (Wash.) 97 Pac. 494;
Hammond v. Mau, (Wash.) 124 Pac. 377; 4 R. C. L. 318.
An agreement to sell to a particular person, does not en-
title broker to commission upon sale to another person;
Breen v. Rives, 44 N. Y. S. 672. Modification of contract,
being a new contract, a consideration is necessary to sup-
port it; 13 C. J. 592; Wescott v. Mitchell, (Me.) 50 A. 21.
Admission of improper evidence, and undertaking to with-
draw it from consideration of the jury, improper; Ste-
phenson v. Jackson, 128 S. W. 1196. The case of Geier v.
Howells, (Colo.) 107 Pac. 255, reported with exhaustive
foot notes in 27 L. R. A. (N. S.) 786, is practically on all
fours with the case at bar.

*James P. Kem,* for respondent.

The plaintiff is entitled to recover the commission
earned; Friedman v. Suttle, 10 Ariz. 57, 85 Pac. 726; Viley
v. Pettit, (Ky.) 29 S. W. 438; Wolf v. Co., 134 N. Y. S. 491;
1 Page on Contracts, 843; 1141; Duncan v. Borden, (Colo.)
59 Pac. 60. The court did not err in the admission of
evidence; 1. The plaintiff's testimony as to John Huber's
statement to the defendant Empey as to his interest in the
proposed purchase was admissible against the defendant;
9 Corpus Juris 650; 2. Certain advertisements inserted
by the plaintiff in regard to the defendant's property
were property admitted; 9 C. J. 647; Ross v. Major,
(Mo. App.) 163 S. W. 880; 3. No error can be predicated

upon the admission of the testimony of the witness Sternberg, which the jury were instructed to disregard; 38 Cyc. 1348; 4. The plaintiff's testimony as to the statement of the defendant's clerk Schmitt, made in the presence of the defendant, was properly admitted; Sonnentheil v. Co., 172 U. S. 401; 5. The contracts of sale signed by the defendant and Paul Huber were admissible; Cutten v. Pearsall, (Cal.) 81 Pac. 25; Cannon v. Castleman, (Ind.) 55 N. E. 111; Hull v. Brown, 21 Minn. 163; Folansbee v. Sawyer, (N. Y.) 51 N. E. 994; 6. The rulings of the trial judge on the admission of evidence were correct and proper. The trial court did not err in his instructions to the jury; 1. Instruction No. 1 is unobjectionable; 22 C. J. 126; Longree v. Co., (Mo. App.) 97 S. W. 272; Commonwealth v. Webster, 5 Cushing 295; Wyrick v. Co., (Kan.) 163 Pac. 1059; 38 Cyc. 1623; Henry Gaus Co. v. Magee Co., 42 Mo. App. 307; 38 Cyc. 1639; 2. There was no error in the other instructions; Wood v. Wood, (Wyo.) 164 Pac. 844. This court will not, under the law, interfere with the findings of the jury upon questions of fact; Bank v. Henry, (Wyo.) 136 Pac. 863; Cronberg Bros. v. Johnson, (Wyo.) 208 Pac. 446; Hjorth Oil Co. v. Curtiss, (Wyo.) 163 Pac. 362; Feering v. De Wolf, 8 Fed. Cas. No. 4711; Carver v. Louthin, 30 Ind. 530.

RINER, District Judge.

In November, 1922, the appellant, Fred E. Empey, was the owner of some real estate in the City of Casper, Wyoming, on which were situated certain buildings wherein he kept a stock of general merchandise and transacted business under the name of Exchange Furniture and Hardware Company. Thereafter he sold this entire property and business to one Paul Huber for the sum of $76,-144.14. Appellee Kathlyn Montgomery was and is a licensed real estate broker with offices also in Casper. This suit was instituted by her against Empey in the District Court of Natrona County to recover of him commission as

real estate broker on the amount of the sale price, she claiming that she was employed by Empey to find a purchaser; and that she was the inducing cause which brought the seller and the buyer together and accomplished the sale. A jury trial resulted in a verdict for the plaintiff in the full amount of the commission claimed. The vendor has brought the case here for review on direct appeal. For convenience the appellant will hereafter be referred to as the "defendant," the appellee as the "plaintiff."

Upon the trial the plaintiff testified in her own behalf substantially that in November 1922 the defendant first requested her to find a purchaser for his property and agreed to pay her the regular commission for so doing; that she thereafter advertised the property for sale, so wording the advertisement at defendant's request as not to disclose his identity; that through advertisement John Huber came to plaintiff's office about the latter part of February or the first part of March 1923, stating that he was interested in purchasing a furniture store and that he and his brother Paul Huber were intending to buy a business of this nature together; that at John Huber's request plaintiff made an appointment for him to meet the defendant; that plaintiff and John Huber thereupon proceeded to defendant's place of business and negotiations for a sale were undertaken; that at that time John Huber told defendant that Paul Huber and he were interested in buying a business together and that if they took over the business Paul would be in partnership with him; that John Huber stated to the defendant that he, John Huber, wanted his brother Paul to look at the property and talk with the defendant; that the defendant made an appointment to see Paul Huber the next day or as soon as the latter could come down; that defendant stated it was desirable to have two men in the business as he found it was too strenuous for one man to take care of; that thereafter plaintiff

called on the defendant at his store and inquired if Paul Huber had kept the appointment previously made; that defendant replied that Paul Huber was very much interested in the business and that he would not consider dealing with John unless Paul took an interest; that plaintiff asked defendant for an exclusive listing on the property until after the deal was closed, but was told by defendant that he did not wish to give an exclusive listing as he might have an opportunity to sell it himself but that "I will protect you on any kind of a deal that I make with the Huber bunch." The plaintiff also testified that thereafter she made several calls on the defendant and on one of those occasions he stated to her that Paul Huber and he had been up half the night but had not been able to conclude a deal,—the defendant assuring her that if she kept in touch with him he, the defendant, would keep her informed as to how the deal was progressing, and that she did that; that defendant told plaintiff of Paul Huber's effort to finance the deal and that the latter would take the store if he could raise the money but that he did not think he could do so; that defendant told plaintiff at this time that he would do everything that he could and if there was anything else in the matter that plaintiff could do that he would call on her; that plaintiff had several conversations with the defendant before he closed the deal with Mr. Paul Huber, and that the defendant always assured plaintiff that he would pay her the full amount of commission due; that just before the deal was closed plaintiff called on the defendant in his store and was told by the latter that he did expect to close the deal but that he had turned the deal over to his bookkeeper, a Mr. Schmitt, to close; that plaintiff was also told by defendant that he had had a talk with Paul Huber and with Mr. Schmitt before he closed the deal, and it was agreed amongst them that as the plaintiff did not bring Paul Huber around that they would not have to pay plaintiff any commission.

The defendant and his witnesses, John Huber, Paul Huber and the bookkeeper Schmitt, testified. The defendant's testimony was substantially to the effect that he never authorized the plaintiff to procure a purchaser for his property and that the conversations with him as detailed by the plaintiff either did not occur or that he did not remember any such conversations; that while the plaintiff had brought John Huber to see him in regard to the property for sale, negotiations fell through, and that so far as John was concerned nothing further was done; that his bookkeeper Schmitt first called his attention to the fact of Paul Huber's being a possible purchaser. The testimony of the Huber brothers and the bookkeeper Schmitt also substantially contradicted that of the plaintiff and tended to corroborate the testimony of the dedefendant. Paul Huber testified on cross-examination that his brother John had told him that the Exchange Furniture and Hardware Company was in John's mind for a trade several months before Paul bought the property; he also testified that his brother, John Huber, ten days before the final contract of July 28th, 1923, was signed, became actively engaged as manager of Paul Huber's Salt Creek store, which received and sold part of the property purchased from the defendant; that John Huber in that connection received the same salary as an employe in this store and whatever Paul Huber felt like giving him.

On June 15th, 1923, the defendant entered into a written contract with Paul Huber to sell the building and stock in question. The transaction, however, was evidently not entirely completed for under date of July 28th, 1923 a second written agreement was entered into between the parties to clear up some matters not covered by the preceding memorandum of sale.

It is contended by the defendant that the preponderance of the evidence is in his favor. From the brief outline of the testimony given above it is apparent that the

evidence was conflicting, and it is not the duty of this court to weigh the evidence under such circumstances. That duty devolved upon the jury which tried the case.

As was said in the brokerage case of Murphy v. Live-stock Company, 26 Wyo. 455, by this court:

"There was a wide misunderstanding between the parties. The jury accepted the defendant's version. * * * * This was a matter peculiarly within the province of the jury and we, under the well-known and oft-stated rule 'that an appellate court should not reverse a verdict rendered when the evidence is conflicting,' have no right to disturb the verdict."

In the case at bar the jury saw fit to acept the plaintiff's version of the transaction. Preponderance of evidence is not established solely by the number of witnesses.

Complaint is made that the trial court received in evidence over defendant's objection certain newspaper notices of the plaintiff offering the property mentioned above for sale. There was testimony that John Huber came to plaintiff's office in the first place in response to her advertisement. The plaintiff claimed that Paul Huber and John Huber were associated in the purchase. These exhibits tended to corroborate this testimony as to John Huber's appearance in the office, as well as to show that plaintiff was diligently endeavoring to carry out the contract for sale and commission to which she testified. We think they were admissible in evidence. In Ross v. Major, 178 Mo. App. 431, 163 S. W. 880 a similar objection was disposed of by the court as folows:

"Defendant objected to the introduction of numerous exhibits offered by plaintiff in the form of advertisements of this farm and letters in response thereto on the ground that they did not tend to prove that plaintiff was the procuring and inducing cause of the sale to Schimanoski, and requested three instructions, all of which were refused, to the effect that the jury should disregard the fact that

plaintiff advertised the farm or what he wrote to persons other than Schimanoski in regard to the sale of the farm, unless they believed from the evidence that such acts directly contributed toward the sale of said farm to Schimanoski and were the procuring and inducing cause of the sale. The contract was made in July 1912 and the sale occurred in March 1913. Defendant was insisting that it was his advertisement and his efforts which procured the purchaser. We think the exhibits were clearly admissible for the purpose of showing that plaintiff had not abandoned the contract (defendant claimed he revoked plaintiff's agency) and was diligent in his efforts to procure a purchaser.''

And in Decker v. Widdicomb, 100 N. W. 573, 137 Mich. 331, it was said:

''The newspaper advertisement was competent as showing in part what was done by plaintiffs in pursuance of what they claimed they were expected to do.''

In the case at bar, defendant claimed that plaintiff had never had any contract or authority to find a purchaser, though he did testify that when plaintiff brought John Huber to his store he discussed the matter of a sale or exchange and ultimately declined to consider taking John's Washington property on the deal.

It is also objected that error was committed during the trial of the cause in permitting the witness Sternberg to testify that plaintiff went with him to defendant to discuss the sale of defendant's business previous to the time that negotiations were begun with John Huber. The court, at the conclusion of witness's testimony, struck it out entire, and further instructed the jury to disregard it. The error, if any, in receiving such testimony was thus cured. Pennsylvania Co. v. Roy, 102 U. S. 451, 26 L. Ed. 141, 4 C. J. 990, and extended list of cases cited.

The original memorandum of sale and option agreement to purchase, and also the final agreement of purchase and sale between the defendant and Paul Huber,

were received in evidence over defendant's objection. It is insisted that these documents should have been excluded because it was not shown they resulted from plaintiff's efforts to consummate a sale of defendant's property. It is alleged in plaintiff's petition that as a result of the services of the plaintiff the sale was made to Paul Huber. This evidence established the fact of the sale and was clearly admissible as a part of plaintiff's case. In Cutten v. Pearsall, 81 Pac. 25, 146 Cal, 690, the court says:

"As already stated, the court did not err in permitting the plaintiff, over defendant's objection, to offer in evidence the contract bearing date August 21, 1900, between the defendant and J. E. Henry & Sons. The purpose of the evidence was in support of the allegation of the complaint, which was denied by the defendant, that the sale of the lands mentioned in the contract sued upon had been duly consummated."

See also Cannon v. Castleman, 24 Ind. App. 188, 55 N. E. 111, at 113; Mayhew v. Brislin, 108 Pac. 253, at 254; 13 Ariz. 102.

Whether the plaintiff was the procuring cause of the sale was the crucial question in the case. A great many of defendant's objections to evidence are based upon the theory that there was no evidence of this ultimate fact introduced in the cause. With that theory we cannot agree. There is the testimony of the plaintiff already mentioned, which the jury had the right to believe in preference to that of the defendant and his witnesses. There is the undisputed fact that John Huber became manager of his brother Paul's branch store several days before the final contract of sale was signed between Paul Huber and the defendant, and was employed to dispose of some of the purchased stock of merchandise. There is Paul Huber's testimony that his brother John told him that he had the Exchange Furniture and Hardware Com-

pany in mind for a trade, although he could not recall when it was called to his attention, finally stating, however, that it was about two or three months before he bought the property. And there are other facts and circumstances in the case which, when all duly considered by the jury, authorized them to find that John was associated with his brother Paul in the transaction, and hence infer that plaintiff was the procuring cause of the sale. In Clark v. People's etc. Co., 206 Ky. 686, 268 S. W. 333, the syllabi accurately state the substance of the court's decision as follows:

"Where broker introduced to owner a prospective purchaser who in turn introduced his associate who was to join in purchase, and where associate procured third person to join him on prospective purchaser's withdrawal from transaction, broker as a matter of law was procuring cause of sale to associate and third person.

Broker who brought seller and buyer together and started negotiations was procuring cause, though he did not conduct negotiations."

See also Minks v. Clark, 201 Pac. 45, 70 Colo. 323.

Plaintiff testified that during the course of the negotiations between the defendant and Paul Huber defendant said to her "I will protect you on any kind of a deal that I make with the Huber bunch." Defendant denied that he made this statement. If the defendant did make such a statement it would be tantamount to a ratification by him of plaintiff's efforts and agency in the matter and entitled plaintiff to her commission. See Decker v. Widdicomb, supra. McCartney v. Clover etc. Co., 232 Fed. (C. C. A. 8th Cir.) 697; 1 A. L. R. 1127; Peterson v. Wilde, 173 N. W. (Iowa) 126. Of this fact the jury was the judge, and it was properly submitted to them by the court's instructions.

We have carefully scrutinized the instructions given and refused by the trial court over objections and excep-

tions by the defendant, and are unable to see that reversible error was therein committed. The jury appears to have been fully instructed as to all questions of law necessary under the pleadings and evidence in the case. Both plaintiff and defendant had their theories of this law-suit fairly submitted in a cause where the conflicting testimony made it eminently one for the final disposition of a jury, unless some grave error intervened. We have not found such error.

Our examination of the entire record has accordingly impelled us to the conclusion that the judgment of the trial court should be affirmed, and it is so ordered.

*Affirmed.*

Blume, Ch. J., and Kimball, J., concur.