## FOLEY v. HASSEY

(No. 2123; October 30, 1939; 95 Pac. (2d) 85)

For the defendant and appellant, there was a brief by *Louis J. O'Marr* and *William D. Redle* of Sheridan, and oral argument by *Mr. O'Marr*.

For the plaintiff and respondent, there was a brief and oral argument by *H. Glenn Kinsley* of Sheridan.

RINER, Chief Justice.

The appellate proceedings in this case were instituted pursuant to the direct appeal method and seek the review of a judgment of the district court of Sheridan County. The action was one for a real estate broker's commission.

In his petition the plaintiff and respondent, Foley, relied upon an oral agreement made on or about August 1st, or September 1st, of the year 1937, with the defendant and appellant, Hassey, the pleading touching this matter reading:

"That said Defendant employed the Plaintiff as a real estate broker to find a buyer for the Defendant's said ranch and about thirty head of cattle located thereon and certain farm machinery, upon the following terms: Said Defendant expressly and orally agreed with the Plaintiff that if said Plaintiff would find a buyer for said ranch, cattle and farm machinery at a price of $10,000.00 net to the Defendant, that the Plaintiff might price said property up to $12,000.00, and that the Plaintiff should have as his commission for the sale thereof any sum in excess of $10,000.00 up to $12,000.00 for his commission and services in selling said property."

Foley alleged and claimed a commission of $2,000 in consequence of his performance of his part of the agreement set forth and the refusal of Hassey to pay the same.

Defendant Hassey, in the first defense of his answer, admitted that he owned the ranch, cattle and machinery referred to in plaintiff's pleading; that they were located in Big Horn County, Montana; and that he authorized "plaintiff, as a real estate broker, to sell the real estate hereinabove described and said cattle and farm machinery for the sum of $15,000.00 net to de-

fendant, and thereafter reduced the sale price of said real estate and personal property to the sum of $12,000.00 net to defendant. The defendant admits he sold said real estate, above described, and said personal property to one George Cormack for the sum of $12,000.00 in cash." The first defense also interposed a general denial of the other allegations of plaintiff's pleading. The second defense of the answer alleged that the oral agreement aforesaid was not made in the State of Wyoming, but in Montana, and that the law of the State last mentioned provides that:

"The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged, or his agent;

"6. An agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or commission."

Plaintiff's reply was in form a general denial of the new matter set out in the answer.

Trial was had to the court without a jury, with the result that a general finding was made in favor of Foley, and judgment was thereupon entered against Hassey, for the amount in suit. The case is here at the instance of the latter.

The proofs were to some extent somewhat conflicting, but in view of the general finding in plaintiff's favor, his version of the contract and what was done thereunder, being supported by substantial evidence, we are obliged to take as the true history of the transaction. His testimony, so far as needful to understand the contention presented here, was substantially to the following effect:

That Foley is and was during the years 1936 and 1937 a licensed real estate broker under the laws of Wyoming and engaged in business in Sheridan; that he was acquainted with the defendant's ranch located

in Big Horn County in the State of Montana, known as the "CX" ranch and as the "Craig" ranch, which comprised 4400 acres, having upon it some 25 to 30 head of cattle and a certain amount of second hand farm machinery; that in April, 1936, he met Hassey, who invited him to look over the place; that he accepted this invitation, and procured from the owner at that time memoranda and data concerning the selling points of the ranch inasmuch as Hassey had previously listed the property in Sheridan, Wyoming, with Foley for sale, upon the terms of $15,000 to Hassey, the understanding being that if a larger price could be obtained, it could be sold for that; that Foley endeavored thereafter, under this arrangement, to find a purchaser and took a number of prospective buyers to view the ranch, but without avail; that the last of August or the first of September, 1937, Hassey met Foley on the street in the City of Sheridan, Wyoming, and told him that he, Hassey, "would cut the price to $12,000, $10,000" to go to Hassey and Foley was to receive the difference, or $2,000, if he "could find a buyer"; that one Jack Carroll and a man by the name of Grant Mumper were present at this conversation. On the trial Carroll and Mumper, as witnesses for the plaintiff, corroborated Foley in this statement of the arrangement.

Foley also testified that Carroll worked for him and this fact was known to Hassey; that this new agreement was satisfactory to Foley and Hassey was advised by the latter that every effort would be made "to find a buyer for him"; that pursuant to this changed oral agreement, Foley contacted one Disbrow at the Western Hotel in the City of Sheridan, Wyoming, about October 20, 1937; that this man was a cattle buyer operating between Great Falls, Montana, and Colorado Springs, Colorado; that Foley talked to Disbrow on this occasion and told him about the Craig or C X

ranch, "the wonderful buildings, all about it," and priced it to Disbrow at $12,000; that Disbrow then told Foley he was looking for a large ranch near the highway; that Disbrow also said he would be back in Sheridan in about ten days and would like to look at this ranch; that Carroll, about the last of October or the first of November, 1937, at Foley's request and direction, took Disbrow out to the Craig ranch and showed him the property; that Disbrow thereafter told Foley he liked the place very much and would buy it; that he, Disbrow, would like to talk to Mr. Cormack about it, for whom Disbrow was acting; that he, Foley, spoke several times about the ranch to Disbrow in the City of Sheridan subsequent to talking with him in the Western Hotel; that Foley told Hassey several times about Disbrow and Cormack while working in connection with the matter.

It is in evidence, also, that Hassey expected to pay a commission to a broker who would find a buyer for the place; that close personal relations existed between Disbrow and Cormack; that Disbrow's sister married Cormack sometime between the date of the conversation at the Western Hotel and the trial of this case in the district court; that a sale of the property was consummated by Hassey, Disbrow and Cormack in the absence of both Foley and Carroll; that Disbrow gave his own check for $3,000 as a down payment to Hassey, about December 28, 1937, and he was subsequently reimbursed in that amount by Cormack; that to the question, on cross-examination of Disbrow, by Hassey's counsel, "And the balance of the $9,000 was paid by Mr. Cormack also?", Disbrow replied, "It was paid by —by Mr. Cormack sent me to purchase it."; that at the time of the trial Mr. and Mrs. Disbrow and Mr. and Mrs. Cormack were residing on the ranch; that Carroll was never at any time a licensed real estate broker or salesman under Wyoming law; that on cross-

examination Foley stated he had agreed to give Carroll a share in the commission earned for Carroll's work in the matter; that Carroll testified he worked in connection with this transaction as an employee of Foley; that he took Disbrow out to the ranch after Foley had told him about Disbrow being interested in the C X ranch.

The principal contention advanced on behalf of Hassey is that as Carroll was not a licensed real estate broker or salesman under the law of this State, this fact under the circumstances appearing herein, barred Foley from obtaining any compensation whatsoever for his services. Several California cases, notably Firpo v. Murphy, 72 Cal. App. 249, 236 P. 968; Haas v. Greenwald, 196 Cal. 236, 237 P. 38; Hahn v. Hauptman, 107 Cal. App. 739, 291 P. 418; and Wise v. Radis, 74 Cal. App. 765, 242 P. 90, are relied on in support of this position, inasmuch as the California real estate brokers and salesmen law is much like ours. The pertinent portions of the Wyoming statutes on the subject are: The first paragraph of Section 97-401, W. R. S., 1931, which reads:

"It shall be unlawful for any person, co-partnership, association or corporation, to act as a real estate broker or real estate salesman, or to advertise or assume to act as such real estate broker or real estate salesman, without a license issued by the real estate board."

The first two paragraphs of Section 97-402, W. R. S., 1931, reading:

"A real estate broker within the meaning of this article is any person, firm, partnership, co-partnership, association or corporation, who for a compensation or valuable consideration sells or offers for sale, buys or offers to buy, or negotiates the purchase or sale or exchange of real estate, or who leases or offers to lease, or rents or offers for rent, any real estate or the improvements thereon for others, as a whole or partial vocation. The term 'real estate' as used in this article

shall include leaseholds and other interests less than leaseholds but shall not include mineral lands.

"A real estate salesman within the meaning of this article is any person who for a compensation or valuable consideration is employed either directly or indirectly by a real estate broker, to sell or offer to sell, or to buy or offer to buy, or to negotiate the purchase or sale or exchange of real estate, or to lease, to rent or offer for rent any real estate, or to negotiate leases thereof, or of the improvements thereon, as a whole or partial vocation."

That portion of Section 97-407, W. R. S., 1931, whose language is:

"No person, co-partnership or corporation engaged in the business or acting in the capacity of a real estate broker or a real estate salesman within this state shall bring or maintain any action in the courts of this state for the collection of compensation for any services performed as a real estate broker or salesman without alleging and proving that such person, co-partnership or corporation was a duly licensed real estate broker or real estate salesman at the time the alleged cause of action arose."

It should also be noted, too, that Section 97-412, W. R. S., 1931, provides for criminal punishment of those who violate the provisions or terms of the Act.

A careful study of the cases cited by appellant convinces us that they do not present facts such as are now present and which we regard as controlling in the case at bar. Several of them do, however, supply us with legal principles which would appear of service herein. In Wise v. Radis, supra, it is said:

"No principle of law is better settled than that a party to an illegal contract or an illegal transaction cannot come into a court of law and ask it to carry out the illegal contract or to enforce rights arising out of the illegal transaction. He cannot set up a case in which he necessarily must disclose the illegal contract or the illegal transaction as the basis of his claim. In Moore v. Moore, 130 Cal. 110, 62 P. 294, 80 Am. St.

Rep. 78, our Supreme Court quotes Judge Duncan in Swan v. Scott, 11 Serg. & R. (Pa.) 164, as follows:

" 'The test whether a demand connected with an illegal transaction is capable of being enforced is whether the plaintiff requires the aid of the illegal transaction to establish his case. If the plaintiff cannot establish his case without showing that he has broken the law, the court will not assist him, whatever his claim in justice may be upon the defendant.' "

The quoted utterance is in accord with the ruling of this court in the case of Kennedy v. Lonabaugh, 19 Wyo. 352, 374, 117 P. 1079, and the statement in Section 445 of 13 C. J. 502-503, declaring upon the authority of an extended list of cases, that:

"An agreement will be enforced, even if it is incidentally or indirectly connected with an illegal transaction, provided, it is supported by an independent consideration, or if plaintiff will not require the aid of the illegal transaction to make out his case. But if plaintiff in establishing his case is compelled to resort to the illegal contract no recovery can be had."

Additionally, we consider that the following listed authorities will be materially helpful in disposing of the legal questions involved in this cause: In Volume 9, Section 99, Page 620, the text last cited, again citing many adjudicated cases, announces the rule that:

"A broker is entitled to a commission for effecting a sale, although he takes no part in the negotiations, where the sale is effected as the result of his introducing the customer and the principal or of his putting them into communication; the principal cannot defeat the right to compensation by closing the transaction directly with the customer, without the broker's further aid."

This statement is supplemented by what is said in 12 C. J. S., Section 91, Page 212:

"It is sufficient that, through the efforts of the bro-

ker, the parties are brought into communication with each other;

\* \* \* \* \* \*

"Where the parties are brought together as a result of the broker's efforts, and a sale, lease, or exchange results, the broker becomes entitled to a commission, although he is not present during, or takes no part in, the negotiations between the parties or the closing of the bargain."

In the case of Martin v. Wheeler, 226 Ky. 834, 11 S. W. (2d) 961, the court observes that:

"It is not necessary that the broker should negotiate the sale when he has procured a purchaser who is able, ready and willing to purchase the property upon the terms named by the principal, and when the broker has brought the parties together and the principal enters into negotiations with the party procured by the broker and concludes a sale with him, the broker has performed his contract and earned his commissions. It is not necessary that the broker should be present at the time the contract is consummated, provided he was the procuring cause in bringing the parties together. Talbott v. Treacy, 213 Ky. 8, 280 S. W. 153; Clarke v. People's Roller Mills Co., 206 Ky. 686, 268 S. W. 333; Kaufman v. Jean, 189 Ky. 511, 225 S. W. 239."

So the Kansas City Court of Appeals in May v. Avansino (Mo. App.) 185 S. W. 1178, remarked:

"When one wishes to sell real estate, the first thing, and the main thing, is to find a purchaser. If the agent employed to sell finds the purchaser, he has performed the principal service of his employment; and the fact that such purchaser falls in with the owner, and they conduct the negotiations and complete the sale, even at a different price, will not deprive the agent, who has been the cause of their meeting, of his commission. Tyler v. Parr, 52 Mo. 249, Lane v. Cunningham, 171 Mo. App. 17, 153 S. W. 525; Millan v. Porter, 31 Mo. App. 563; Hovey v. Aaron, 133 Mo. App. 573, 113 S. W. 718."

The subsequent case, from the Springfield Court of

Appeals in the same jurisdiction, of Hodges v. Ramsey (Mo. App.) 216 S. W. 568, reaffirms the same principle in these words:

"That defendant was liable for the commission when plaintiff was the means of finding the purchaser and bringing about the negotiations leading up to the sale, though he was not present or partaking in the actual sale, is clearly the law. Weidemeyer v. Woodrum, 168 Mo. App. 716, 721, 154 S. W. 894; Park v. Culver, 169 Mo. App. 8, 11, 154 S. W. 806; Tyler v. Parr, 52 Mo. App. 249, 251."

In Shaffer v. Beinhorn, 190 Cal. 569, 213 P. 960, the Supreme Court of California points out that:

"In order to come within the definition of real estate broker or real estate sales man, a party must 'sell or offer to sell, buy or offer to buy, or negotiate the purchase or sale or exchange of real estate. * * *' By the terms of their contract as pleaded the plaintiffs were only required 'to find' or 'to introduce' to defendant a person 'interested' in purchasing and who subsequently did purchase, in order to recover the sum agreed by defendant to be paid to them. By the terms of the contract, as set forth in the complaint, the 'negotiation' of the sale was to be left entirely to defendant. Plaintiffs' only duty was to produce a prospective purchaser. This, the complaint alleges, they did. * * * The acts of plaintiffs, therefore, as alleged in the complaint, fall short of those defined by the Real Estate Brokers' Act, as constituting either a real estate broker or real estate salesman."

See also Poritz v. Sunshine, 211 N. Y. Supp. 493, 125 Misc. Reports 837. These authorities are in harmony with the decision of this Court in Montgomery v. Empey, 36 Wyo. 37, 253 P. 17, which, as to its facts in several aspects, presented a situation resembling that at bar. In that case the decision of the court in Clarke v. People's Roller Mills Co., 206 Ky. 686, 268 S. W. 333, is cited, where the court was asked to, and did, go much farther than is required in the instant case. The facts

and contention of the plaintiff before the court, as pointed out in its opinion, were:

"It will thus be seen that Clarke, as broker, was engaged by the milling company, through Gatewood, as its president, to find a purchaser for the property on a 3 per cent. commission basis, in case of a sale, and that Clarke, through Grace, interested Williams, and later Williams found Moore, and the two later purchased the property. Upon this hypothesis appellant, Clarke, insists that the court should have directed the jury to find and return a verdict for him for $450, the amount of his commission."

Upholding the plaintiff's position in this respect the court said:

"The mere fact that Clarke did not conduct the negotiations is immaterial. If he brought the seller and buyer together and started the negotiations he earned his commission. The milling company engaged Clarke to do this on a 3 per cent. basis, and he presented Grace to Gatewood, and Grace brought in his associate, Williams, who later found Moore, and thus consummated the deal."

With these authorities in mind, under the contract before us, all that Foley agreed to do and all that Hassey required him to do was to find a purchaser for the C X ranch on the terms dictated by Hassey. He, Foley, was not required to conduct any negotiations for a sale, and the fact that they were completed in his absence does not in the least affect his right to a commission. Foley complied with the agreement between him and Hassey, and the commission he claimed was earned when Foley found and interested Disbrow, and Disbrow, acting as a mere intermediary for Cormack, introduced the latter into the transaction and the ranch was purchased upon Hassey's specified terms. Cormack admits that Disbrow knew he wanted a ranch and that he, Cormack, had told Disbrow that, "I thought I would like a ranch if I found the right place."

It should not be overlooked, also, that Disbrow advanced the down payment of $3,000 to close the deal, and, as he says, the remainder of the price, or $9,000, was sent him by Cormack to purchase the ranch; that Disbrow told Foley he would purchase the ranch; and that close personal relations subsisted during the period between the conversation at the Western Hotel and the 28th of December, 1937, between Disbrow and Cormack. Which one of these gentlemen financed the deal, under the circumstances presented by this record, is quite immaterial.

So far as the question of illegality is concerned, it was not at all necessary for Foley in establishing his case to show Carroll's connection with the transaction. Thus, in effect, ruled the Supreme Court of California in the Shaffer v. Beinhorn case, supra. Carroll is not a party herein, nor is any claim that he might have advanced against the appellant Hassey in this cause.

It is undeniably true, also, that Foley was at all times included a licensed broker under the laws of the State of Wyoming. The fact that Foley had agreed to share his commission with Carroll in payment for what the latter did, a fact brought out on cross-examination, we regard as of no consequence in the case under the terms of the contract as found by the trial court.

Additionally, it may be noted concerning the services Carroll performed in this matter, that in Hahn v. Hauptman, supra, it was held, as stated by the syllabus, that:

"Exhibiting property and conversation with prospective purchaser held not 'negotiations' within contract, where real estate salesman was unlicensed at time. (Deering's Gen. Laws Supp. 1925-1927, Act 112, § 2; Deering's Gen. Laws 1923, Act. 112, § 17)."

The contract in that case was "for the sale of a certain parcel of real estate" by the plaintiff within a period of three days, as the exclusive agent for the owner Haupt-

man; at a certain sum, and another amount if "within thirty days after the termination of this listing" a sale was made "to parties with whom" the plaintiff "negotiated during its life." The sale was made within the thirty day period, but one R. had exhibited the property to the purchaser during the three day exclusive listing and had talked with such purchaser about it.

Where the law provided:

"No person, copartnership or corporation shall bring or maintain an action in any court of this state for the recovery of compensation for services rendered, in any place in which this article is applicable, in the buying, selling, exchanging, leasing, renting, or negotiating, a loan upon any real estate without alleging and proving that such person was a duly licensed real estate broker or real estate salesman on the date when the alleged cause of action arose.",

in P. W. Chapman & Co., Inc., v. Cornelius, 39 Fed. (2d) 555, the court said that:

"The plaintiff's conduct should be regarded with reference to an attempt to negotiate, for a fee or commission, a loan to be secured by mortgage on real estate. Unless what he did falls within that phase of the statute, his suit is not affected by its provisions. Furthermore, the law applies only if it is to be construed broadly enough to cover simply calling the defendant's attention to a prospective piece of financing and supplying it with all desired information regarding the property for the purchase of which the financing was contemplated. This is all the plaintiff did and all that he was promised his commission for doing."

In upholding a judgment for plaintiff who was not a licensed broker under the law, the court further remarked:

"He only put the defendant in possession of facts it wanted to enable it to decide whether it would be worth while for it to negotiate for any financing which might be involved in the sale of the building."

In Chambers v. Kirkpatrick, 145 Wash. 277; 259 P. 878, it developed that the only legal question in the case was whether the plaintiff was a broker for the purchase of standing timber. It appeared that he was a timber cruiser, who was employed not to procure or negotiate for the purchase of timber, bring the parties together or ascertain price or terms, but merely to take the purchaser to the timber, survey the corners of the land, help him cruise the timber, and take him back, under his direct employment and control. It was held that the plaintiff was a servant and not a broker. There would appear to be grave doubt whether the services rendered by Carroll in connection with this matter were in any sense a transgression of the specific provisions of the statutes above quoted.

If Carroll had been working for Foley on a fixed salary instead of a share in the commission Foley earned, could the latter, on the ground that he, Carroll, was an unlicensed salesman, decline to pay him that salary when Carroll, under Foley's direction, merely showed Disbrow over the property involved here? We are inclined to think not.

In Jarusz v. Namon, 245 Ill. App. 600, it was held that the right of a salesman for a real estate broker to recover compensation from the broker, based upon commissions received by the broker, for an exchange effected by the salesman, was not affected by the fact that the salesman did not possess a certificate of registration, as required by a statute of the State of Illinois. The plaintiff in that case was not seeking to recover a commission, but compensation from his employer, which was paid by the owners of the property to the latter. The court pointed out that if the plaintiff were bringing an action against the owners of the property to recover commissions, then the statute would apply, but, said the court, "that is not the situation we have before us." And in Black Forest Realty & Investment

Co. v. Clarke, 86 Colo. 454, 282 P. 878, it was decided that one employed as general sales manager to have supervision and control, subject to the board of directors of a corporation, of all sales of lots owned by his employer and of all salesmen engaged in a selling campaign, and who was to receive a salary, plus a percentage of purchase price on sales, was merely an employee and not a broker within the meaning of the Colorado law requiring a broker's license, and the fact that he possessed no license was no defense to his action for compensation.

Relative to the contention of appellant that as the real estate, for the sale of which commission is claimed by the plaintiff herein, was located in the State of Montana and because some of the negotiations were conducted there, it is governed by the laws of that State, as pleaded in appellant's answer, it is sufficient to say that the proof is that the contract was both made in Wyoming and completely performed by plaintiff in this jurisdiction. Our law accordingly must control its interpretation and enforcement.

The judgment of the district court of Sheridan County should be affirmed inasmuch as we find no prejudicial error in the record.

*Affirmed.*

KIMBALL and BLUME, JJ., concur.