[Civ. No. 26961. First Dist., Div. One. Aug. 14, 1970.]

GRACE M. BAZZANELLA et al., Plaintiffs and Respondents, v. AUSTIN J. BELL, Defendant and Appellant.

## COUNSEL

Peter P. Barry and Laura C. Rothkopf for Defendant and Appellant.

Richard N. Rapoport for Plaintiffs and Respondents.

## OPINION

**ELKINGTON, J.**—This appeal concerns the application of the "Personal Property Brokers Law" codified as division 9, sections 22000-22653 of the Financial Code. Hereafter all statutory citations will be to that code.

Defendant Austin J. Bell was the president and 50 percent shareholder of King Way Container Service, Inc. (King Way). King Way was in the business of selling box containers to the United States Government and companies "backed by" the government (buyers). Around July of 1965 the company was short of operating capital and "looking for a source of cash." Its accountant discussed King Way's problem with his mother-in-law and a family friend, respectively plaintiffs and respondents Popovich and Bazzanella. These ladies had cash which they wished to invest. An oral agreement was reached July 7, 1965, under which they would purchase from

King Way invoices (accounts receivable) for goods delivered to the buyers, at a discount of 2 percent or 2½ percent of the amounts due thereon. The invoices were ordinarily paid within 60 days. King Way agreed that as checks covering such invoices were received they would be endorsed and delivered to plaintiffs. Plaintiffs and King Way promptly commenced operating under the agreement.

Sometime in November 1965 plaintiffs and King Way entered into a "Standard Factoring Contract" which was antedated to July 7, 1965. The written contract appears to have substantially confirmed, or repeated, the earlier oral agreement of July 7, with one exception. The exception was a paragraph providing that if an invoice was unpaid after 60 days it would be "charged back" to King Way.

At no time throughout the business relations of the parties did "the total outstanding invoices that had been purchased" by plaintiffs and remained unpaid total less than $5,000.

In February 1966 King Way was adjudicated an involuntary bankrupt. An investigation disclosed that its president, defendant Bell, had converted buyer's checks totaling $12,694.72, which had been assigned to plaintiffs under the agreement, to the use of King Way or others. Roughly half of the checks were converted prior to the written "factoring" agreement of November 1965; the remainder thereafter. In September 1966 plaintiffs commenced the instant action against Bell alleging conversion of the checks and seeking recovery of their amount.

The trial court, as relevant to the issues presented on this appeal, found:

(1) "The agreement between the plaintiffs and said corporation was an agreement for the purchase of accounts receivable, and was not a loan agreement. At no time did plaintiffs loan money to Kingway Container Service, Inc." and

(2) "In July of 1965 accounts receivable belonging to Kingway Container Service, Inc. were sold to the plaintiffs, the value and purchase price of which were in excess of $5,000.00, and at no time was the unpaid balance of the accounts receivable so sold by said corporation to plaintiffs, less than the sum of $5,000.00."

The court concluded that "Bell, individually did knowingly convert checks belonging to plaintiffs having a total value of $12,694.72, to his own use." Judgment was entered accordingly. Bell's appeal is from the judgment.

■ On his appeal Bell contends, as he did at the trial, that as a matter of law each of the so-called "purchases" of King Way invoices was actually a

loan. He places much reliance on the "charge back" provisions of the written agreement. Since they were loans he insists that plaintiffs were engaged in business as "Personal Property Brokers" as defined by section 22009; that they were not licensed as required by section 22200; and therefore under section 22652 they were precluded from any recovery in connection with the several transactions.

Section 22652 provides: "Except as provided in Section 22651 [here inapplicable], if any provision of this division is violated in the making or collection of a loan, the contract of loan is void, and no person has any right to collect or receive any of the principal, interest, or charges in connection with the transaction."

Plaintiffs' contentions have been, and are, (1) that the subject transactions were "purchases" as found by the court, not "loans," and were therefore unaffected by section 22652, and (2) that even if such transactions be considered as loans they were exempted from the effect of section 22652 by the provisions of section 22053. This latter section provides that section 22652 does "not apply to any bona fide loan of a principal amount of five thousand dollars ($5,000) or more or to a duly licensed personal property broker in connection with any such loan, . . ."[1] By virtue of section 22054, q.v., the advances here which at all times aggregated at least $5,000 in amount, considered as loans, were loans of "a principal amount of five thousand dollars ($5,000) or more." No real contention is made to the contrary by Bell.

Bell's contention that for section 22053 to apply, not only must the loan be of a principal amount of $5,000 or more, but the maker of the loan must also be a licensed personal property broker, is obviously without merit. The contention is contrary to the plain language of the statute. As previously pointed out, section 22053 states that section 22652 does *not apply to any bona fide loan of a principal amount of five thousand dollars (5,000) or more or to a duly licensed personal property broker in connection with any such loan. . . .*" (Italics added.)

It follows, assuming *arguendo* that plaintiffs' advances to King Way were "loans," that the judgment in their favor was supported by the findings. It thus becomes unnecessary to a disposition of this appeal to resolve the

[1]As enacted in 1951, and applicable here, the full text of section 22053 stated: "The following sections of this division do not apply to any bona fide loan of a principal amount of five thousand dollars ($5,000) or more or to a duly licensed personal property broker in connection with any such loan, if the provisions of this section are not used for the purpose of evading this division: Sections 22004, 22005, 22451, 22452, 22453, 22454, 22455, 22456, 22457, 22458, 22459, 22460, 22461, 22462, 22463, 22464, 22465, 22466, 22470, 22472, 22473, 22474, 22650, 22651, and 22652." (Italics added.)
In 1967 sections 22404, 22405, 22450, 22467, 22468, 22469, 22480 and 22607 were added to the code sections therein listed.

legal effect of the "charge back" provisions of the written contract dated as of commencement of the parties' business relations, but actually executed toward its close.

We deem it proper to point out that if, contrary to the trial court's finding, plaintiffs' advances to King Way were in fact "loans," although the sanctions of sections 22652 would have been inapplicable the ladies would nevertheless have been subject to the licensing provisions of the Personal Property Brokers Law (see licensing provisions of the Personal Property Brokers Law, §§ 22009, 22200), and, being unlicensed, that their loans would have constituted illegal transactions. Indeed, engaging in such a business would be a public offense (see § 22653). Ordinarily parties to such transactions "may not obtain the aid of the courts . . . to recover any consideration parted with pursuant thereto; the law leaves the parties where it finds them." (*Richardson* v. *Roberts*, 210 Cal.App.2d 603, 606-607 [26 Cal.Rptr. 829].) Here, however, the statute, section 22053, clearly expresses a contrary legislative intent. As said by Chief Justice Traynor in *Lewis & Queen* v. *N. M. Ball Sons*, 48 Cal.2d 141, 150-151 [308 P.2d 713]: "[T]he courts generally will not enforce an illegal bargain or lend their assistance to a party who seeks compensation for an illegal act. The reason for this refusal is not that the courts are unaware of possible injustice between the parties, and that the defendant may be left in possession of some benefit he should in good conscience turn over to the plaintiff, but that this consideration is outweighed by the importance of deterring illegal conduct. . . . [¶] *In some cases, on the other hand, the statute making the conduct illegal, in providing for a fine or administrative discipline excludes by implication the additional penalty involved in holding the illegal contract unenforceable;* or effective deterrence is best realized by enforcing the plaintiff's claim rather than leaving the defendant in possession of the benefit; or the forfeiture resulting from unenforceability is disproportionately harsh considering the nature of illegality." (Italics added.) (See also *Keller* v. *Thornton Canning Co.*, 66 Cal.2d 963, 966 [59 Cal.Rptr. 836, 429 P.2d 156].)

It is not clear whether Bell makes an additional claim of error on the part of the trial court "in allowing respondents to amend their complaint." Our consideration of the point, however, discloses no error and no prejudice to Bell.

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 9, 1970.