**FRIEMAN, Plaintiff-Appellant, v GREAVES, ET., Defendants-Appellees.**

Ohio Appeals, First District, Hamilton County.

No. 6727.   Decided January 13th, 1947.

Walter K. Sibbald, Cincinnati, for plaintiff-appellant.
Paxton & Seasongood, Cincinnati, for defendants-appellees.

## OPINION

By ROSS, J.:
This is an appeal upon questions of law from a judgment of the Court of Common Pleas of Hamilton County.   The trial

court, at the conclusion of the plaintiff's evidence, instructed a verdict in favor of the defendant.

The action was brought by a real estate broker to recover a commission based upon the sale of real estate and certain businesses, the property of the defendants, of which sale plaintiff claims he was the procuring cause. The plaintiff also claims by reason of an assignment from an attorney associated with him in the negotiations, which it is alleged resulted in procuring such sale.

The subject of the sale consisted of the businesses known as The Greaves Machine Tool Company, a corporation, whose stock was owned by the defendants, and The Cincinnati Yacht & Supply Company, a partnership consisting of the defendants.

The purchaser was the Fay & Egan Company, a partnership, consisting of Walter E. Schott, Margaret Schott, his wife, and Joseph Schott, his brother.

It appears from the evidence that Walter E. Schott and the Fay & Egan Company had known and done business with the defendants for a number of years before the matter of perfecting a sale of the businesses in question was taken up by the defendants with the plaintiff or the attorney. It also appears that during this period, the matter of the purchase of these businesses was considered by the Schotts and the Greaves brothers, but the matter lay dormant for some time, due to the recent war and the presence of Walter E. Schott in the Armed Forces. The Greaves industries and the Fay & Egan Company were associated in a number of business contacts. The Fay & Egan Company purchased certain service parts for use in their woodworking machine business, and, on the other hand, had loaned certain machinery to the Greaves industries. Walter E. Schott entered the Armed Forces and remained in service almost three years.

During the year 1944, the defendants and Walter E. Schott had a number of conferences in which the purchase of the Greaves' businesses was discussed.

On June 30, 1945, at the home of Walter E. Schott, an option to purchase the businesses was executed by the Greaves in favor of Joseph J. Schott, a partner in the Fay & Egan Company, or his nominee, to expire at the end of 35 days. Walter E. Schott, being still in the service at the expiration of this period, the option was extended from time to time until August, 1945, when the deal was closed for the sale of the businesses to the partners in the Fay & Egan Company.

Neither the plaintiff nor the attorney had any direct

contact with any of these partners or solicited them to purchase these businesses.

In the latter part of 1943 the defendants advised their attorney, Albert Spievack that they were desirous of selling their businesses, the Tool Company and the Yacht & Supply Company.

The attorney busied himself for some time in an effort to accomplish this task and then realizing he was not a qualified real estate broker enlisted the services of the plaintiff, who was such licensed broker.

George Greaves, called for cross-examination by the plaintiff, testified that Spievack told him that the plaintiff "was more or less his leg man, his errand man, and that he would assist Mr. Spievack in the sale of our businesses."

It is apparent that both the plaintiff and the broker were active in securing a purchaser for the businesses and spent a great deal of time and labor in this effort. They brought more than one proposal to the defendants, but owing to certain difficulties due to the uncertainty of the amount of taxes to be assessed against the businesses, these offers never reached any definite form or conclusion.

There is also evidence that Walter E. Schott was cognizant of these negotiations and that there was a strong probability that one of them would mature into a definite offer to purchase, which would be acceptable to the defendants.

In the summer of 1943, Mr. Schott states:—

"Coleman Harris called me and said they were planning on purchasing or trying to purchase the Greaves Company and I said 'All right, go ahead, we are working on the same thing. In fact, my brother Joe Schott is working on it and if you buy it we may work out a deal with you. We are only interested in certain things. We are not interested in everything, and if you buy it we may be interested in buying them from you.' "

It is also clear that shortly before an understanding was definitely reached between the defendants and the Schotts, resulting in the option, that matters under the management of the plaintiff and attorney Spievack were reaching a final stage, resulting in an offer from a group of financiers with whom the plaintiff and the attorney had been working for some time.

It is also clear that Walter E. Schott was made aware of the imminence of this conclusion and promptly closed with the Greaves. It is upon this basis the plaintiff seeks to recover.

In his brief the plaintiff states: "the Schotts must have felt that haste was necessary if they were to prevent the other interested parties from participating in the purchase."

There is evidence that the plaintiff sought to interest a man by the name of Gabriel, who was purchasing agent for the Fay & Egan Company. In connection with this conference, plaintiff states in his brief "if the plaintiff's meeting with him caused the Schotts to **resume** the negotiations with the defendants, which had been dormant for a long time, then the question became one of whether the plaintiff had found and introduced a customer." (Emphasis added) And, again, in the brief it is stated "and if the competition among the prospective purchasers created by the plaintiff, resulted in this sale being made, then plaintiff was the procuring cause of the sale and earned his commission."

Thus, the plaintiff takes a definite position, not that he induced the Schotts to purchase from the Greaves by any direct or indirect solicitation, but that he scared them into purchasing from them.

The proposition is very simple. It is not that the broker induces A to purchase from B, but that by bringing C into an attitude of a purchaser from B, he causes A to close with B. If the plaintiff had been negotiating with the Schotts and had used this device to secure an offer from them to the Greaves, a different situation would be presented. That such is not the case is shown by what occurred at a conference in which the plaintiff and George Greaves were present at the office of the latter at the time prospective purchasers were presented to George Greaves.

In the evidence of the witness Sidney Brant, is found:

"Q. While you were out there at these meetings I will ask you whether you ever talked with any of the Greaves brothers?

"A. Only with Mr. George Greaves.

"Q. Can you tell us when it was you talked with him?

"A. I cannot fix any exact date because I didn't make any notation, but I know it was prior to the date a written offer was submitted by Moskowitz Brothers for the purchase of the Greaves plant.

"Q. Are you familiar with that written offer?

"A. I am, sir.

"Q. I will show you Exhibit No. 4 and ask you if that is the offer that you referred to?

"A. That seems to be it, yes, sir.

"Q. Will you tell us, Mr. Brant, just what was said by you and by George Greaves and Philip Moskowitz and Mr. Frieman or any one who attended that meeting that you have referred to?

"A. Well, that we were interested in, because Mr. Greaves was talking at this time about selling the stock, and if our clients purchased the stock of the corporation we would naturally inherit any tax liability, so the thing I wanted determined at that time was first of all if the officials salary had been raised, because if the officials salary had been raised, if they had been raised without the permission, then we would be taking over an income tax problem. In addition to that we discussed the question of a tax liability on a pension trust and it was represented to us in oral conversation with Mr. Greaves that there were certain assets of the corporation which did not appear on their statement. He contended that there were certain other assets there and we had a conversation about the possible tax liability in the event our clients purchased this plant, and we also asked him in the event we made an offer, would we be in the position of having him take that offer and peddle it around to different persons and we mentioned a specific party at that time.

"Q. Who did you mention?·

"A. Mr. Walter Schott.

"Q. Tell us just what was said as near in the language as you can, in which Mr. Walter Schott's name was used.

"A. Well, I am just going back in my memory now. We asked him in the event we gave him a written offer, 'Are you going to take it to Walter Schott and ask him to increase his offer and then give it to him' and he said no, he would not do that."

The plaintiff relies upon certain evidence that intimate associates of the purchasers, and especially of Walter E. Schott, were involved in negotiations which resulted in offers to the defendants by various groups.

Walter E. Schott has five brothers:—Joseph Schott, a partner in the Fay & Egan Company; Milton Schott is an attorney and is associated in business with Harry Burns, Attorney for many of the Schott interests; Harold and Alfred Schott, associated with Walter E. Schott in certain businesses, and Earl Schott, engaged in business independently of Walter E. Schott.

There is evidence that Harold Schott was present at meetings where the purchase of the Greaves interests were con-

sidered and more or less definite propositions to purchase agreed upon. There is also evidence that Harry Burns was consulted about these propositions and on one occasion advised those negotiating such purchase that certain machinery held by the Greaves belonged to Fay & Egan Company.

None of this evidence justifies the inference that the knowledge acquired by those close to Walter E. Schott and which it may reasonably be supposed was communicated to Walter E. Schott was instrumental in causing the purchase of the businesses except to the extent that such knowledge of an impending deal with interests' other than the purchasers caused the purchasers to close with the defendants. There is absolutely no evidence that such business associates, including Gabriel, the purchasing agent of the Fay & Egan Company, were ever approached or even considered by the plaintiff or his attorney associate as agents or representatives of the purchasers. The evidence is definitely conclusive that neither the plaintiff nor the attorney Spievack ever tried to sell these businesses of the defendants directly or indirectly to the purchasers. Of course, there is no claim of an exclusive contract of sale on behalf of plaintiff at the time the Greaves sold to the purchasers. Such device is the method used by brokers to protect themselves. If the broker is willing to operate upon a basis permitting independent action on the part of the owner, he cannot complain if a sale is made by the owner of which he is not the procuring cause.

The plaintiff relies upon a number of authorities, particularly the case of Lippert, et al. v Page, 13 O. C. C. (N. S.) 105, as sustaining his claim that he is entitled to a commission for a sale made under the circumstances here involved.

None of such authorities meets the present situation. In Lippert v Page, at page 110 of the opinion it is stated: "but in such cases it must affirmatively appear that the purchaser was induced to **apply** to the owner through the means employed by the broker." (Emphasis added)

It must be remembered that the defendants and the purchasers had been associated in business for many years prior to the employment of the attorney of the defendants to sell the businesses.

It is also conclusively shown that during this period the matter of sale to the purchasers was almost continuously under consideration.

The plaintiff cannot recover a commission because he scared the purchasers into action. Such a rule would permit recovery in almost any case where a sale was made inde-

pendently of the direct action of the broker.

The writer of this opinion dissented in the case of **Cline, Inc. v Union Thread Co., 73 Oh Ap 393,** because it was apparent to him that the broker there was the procuring cause of the sale. The instant case contains no factor impelling a similar conclusion. The Cline case is authority for affirmance of the action of the trial court.

The plaintiff also complains of the action of the trial court in excluding the introduction of certain evidence. The proferts appearing in the record fail to show any instance where, if such evidence had been admitted, it would have tended to prove that the plaintiff was the procuring cause of the sale. It merely tended to prove that the purchasers were made aware of the terms of impending offers by others, or that such purchasers were caused to act more promptly than they otherwise would have acted. There is no evidence introduced or proffered indicating that the purchasers were made aware through the efforts of plaintiff that the defendants possessed a selling attitude. On the contrary, the evidence is conclusive that the purchasers were continuously aware of such attitude for many years before the plaintiff knew of such attitude and that the purchasers, owing to their close association with the defendants fully understood the whole situation and had it not been for the war and the absence of Walter E. Schott in the service and the difficulty over tax adjustment would have closed the deal much earlier than it was closed. The defendants were proceeding along two parallel lines of effort to sell their businesses, one indirectly with the Schotts, one through the efforts of plaintiff. Either might have resulted in consummation. For one, the plaintiff would have been entitled to commission. For the other, he is not.

One further matter is presented by this appeal. The defendants claim the action of the trial court was correct, because it is asserted that the evidence shows that the plaintiff's commission is to be divided with an unlicensed person—attorney Spievack. If this were true, the plaintiff could not recover. **Stanson, Inc. v McDonald, 147 Oh St 191.**

If this case had been submitted to a jury, there is evidence upon which the jury might predicate a verdict for the defendants upon this basis.

The attorney testified he expected the plaintiff to divide with him upon a gentlemanly basis, although he had executed an assignment to plaintiff of all his interest in the commission for a purely nominal consideration. However, the action of the trial court is being considered upon a verdict instructed

500

at the close of the plaintiff's evidence. Under such circumstances, all doubts as to the reasonable inferences from evidence are to be resolved in favor of the plaintiff. For this reason, it would be improper to predicate affirmance of the action of the trial court upon this basis. No splitting of commission is conclusively shown by the evidence in the plaintiff's case.

The judgment of the Court of Common Pleas is affirmed.

HILDEBRANT, PJ, MATTHEWS and ROSS, JJ, concur in Syllabus, Opinion and Judgment.