[Civ. No. 26318. Second Dist., Div. Four. Dec. 10, 1962.]

HERBERT JOHN RICHARDSON, Plaintiff and Appellant, v. SIDNEY J. ROBERTS, Defendant and Respondent.

William P. Camusi for Plaintiff and Appellant.

Scales & Henrikson and Harold Lee Henrikson for Defendant and Respondent.

BURKE, P. J.—Appeal from a judgment after demurrer to the second amended complaint was sustained without leave to amend.

The question presented is whether or not a licensed real estate loan broker may recover commissions shared with another who fraudulently represented himself as holding powers of attorney from lenders, but was not licensed to act as a broker or salesman under the Real Estate Act.

The complaint alleged defendant informed plaintiff that he had power of attorney to irrevocably commit lenders to make loans secured by real property and that defendant personally guaranteed these loans to his principals. Defendant told plaintiff that all of his clients desired to net 10 per cent per annum interest on their loans, the legal limit permitted by law, and

did not want to diminish their returns by compensating for the considerable accounting and tax service that he performed in connection with said loans; that since his activities did not require licensing as a real estate broker plaintiff could properly compensate defendant for such services out of commissions earned by plaintiff in obtaining the loans on behalf of his client borrowers; that defendant would supply plaintiff with a ready source of funds for his clients thus avoiding the necessity of plaintiff spending time and money in locating such available funds.

The complaint further alleged that plaintiff believed in and relied on the representations made to him by defendant and agreed to defendant's proposal; beginning in August 1957 plaintiff requested various loans on behalf of his clients from defendant which were made by him, defendant handling all of the details and plaintiff never having any contact with any of the lenders involved. The total of such commissions paid by plaintiff to defendant for loans transacted was some $29,278.09 between the period August 17, 1957, to March 15, 1960.

Defendant's plan was approved by his various clients and they knew of the payments made to him by plaintiff. In each instance that such a loan was made, plaintiff always advised his own client making the loan that he, plaintiff, would have to pay a certain sum to defendant and in almost all such cases the borrower personally signed escrow instructions setting forth the fact and the amount of the payment to be made to defendant. Defendant never at any time performed any services on behalf of or to any of plaintiff's clients.

The complaint further alleged that on or about March 15, 1960, plaintiff prosecuted a loan application on behalf of one of his clients to defendant for the sum of $12,500, the loan to be secured by a second deed of trust on certain real property. After reviewing the matter, defendant advised plaintiff he would make the loan on behalf of one of his clients, but the following day defendant advised plaintiff that his client had reconsidered and would not make the loan. The complaint alleged plaintiff realized for the first time that defendant did not have full authority to commit a client to a loan. Plaintiff then learned defendant never held powers of attorney from his clients, that he had had dealings with other real estate brokers wherein he made loans on behalf of his clients and rendered no services to those clients other than to nego-

tiate the loan, or in other words he acted solely as a real estate loan broker.

Plaintiff then alleges, on information and belief, that defendant was acting as a real estate broker without any state license and without any general power of attorney from his clients.

Plaintiff contends that because of the misrepresentations of defendant as above set forth plaintiff was fraudulently induced to pay $29,278.09 to defendant Roberts for his unlicensed and illegal operations as a real estate broker.

It is clear from allegations in the complaint that defendant was an unlicensed person who performed acts within the scope of the Real Estate Act (Bus. & Prof. Code, §§ 10130-10221); consequently payment of portions of plaintiff's commissions as compensation for those acts was unlawful (*Williams* v. *Kinsey*, 74 Cal.App.2d 583 [169 P.2d 487]). Under such circumstances an action based on the contract pursuant to which such payments are made must fail.

 The law governing real estate transactions is clear. It is unlawful for a real estate broker or salesman to split commissions or make other payments for services embraced within the Real Estate Act to any person who is not licensed under the act, unless that person is known to be licensed or presents tangible evidence of the fact (Bus. & Prof. Code, §§ 10137-10138). Further, it is unlawful for an unlicensed person to receive payment or perform such services (Bus. & Prof. Code, § 10139).

. "[I]t has repeatedly been declared in this state that 'a contract made contrary to the terms of a law designed for the protection of the public and prescribing a penalty for the violation thereof is illegal and void, and no action may be brought to enforce such contract' [citations]; and that 'whenever illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case'." (*Loving & Evans* v. *Blick*, 33 Cal.2d 603, 607 [204 P.2d 23]; see *Mansfield* v. *Hyde*, 112 Cal.App.2d 133, 138 [245 P.2d 577].)

Manifestly, defendant could not recover in part commissions on transactions previously consummated while he was unlicensed. (Bus. & Prof. Code, § 10136; see *Holm* v. *Bramwell*, 20 Cal.App.2d 332, 337 [67 P.2d 114].) But "[n]either can plaintiff recover the monies paid pursuant to the terms of the contract. It is a well settled general rule that a party to an illegal contract may not obtain the aid of the courts . . , to recover any consideration parted with pur-

suant thereto; the law leaves the parties where it finds them.'' (*Mansfield* v. *Hyde, supra,* 112 Cal.App.2d 133, 139; see also Rest., Contracts, § 598.)

Plaintiff's argument that he relied in good faith on defendant's representation of possession of a power of attorney from each of his lenders (which if true he asserts would exempt defendant from the licensing requirements under Bus. & Prof. Code, § 10133, subd. (b), *supra*) cannot be sustained. Section 10138 proscribes payment to anyone who fails to present tangible evidence of compliance with licensing requirements. There is no allegation in the second amended complaint that such evidence was either demanded or presented. In that respect it fails to allege justifiable reliance. A person making such payments must actively acquire knowledge that the other has been licensed, or make the payments at his own peril. We cannot read this section to permit reliance on oral representations that other exemptions in the Real Estate Act have been met. To do so would sanction subterfuge and permit evasion of the salutary provisions of the act designed to protect the public dealing in real estate transactions. Nor can we agree with plaintiff's assumption that the exemption under the act accorded one who acts for another by power of attorney can be tortured to fit the facts in this case. The transactions cover a whole series of operations for money lenders, each of whom would seek to evade the law by engaging a nonlicensed broker through the device of making him their attorney in fact. The exemption of section 10133, subdivision (b), Business & Professions Code, is not intended to provide the means for a person actually engaging in the loan brokerage business to avoid the requirement of a license. Assuming the allegation was that defendant in fact had a power of attorney in each case from each lender, the other allegation of the second amended complaint showing 38 transactions clearly would stamp the activities of plaintiff and defendant as engaging in a phase of the real estate business and sharing commissions illegally.

It should also be noted there is no provision in the act that when the unlicensed person has completely performed a contract for agreed services and the person so benefitted has paid the agreed consideration he may recover back the money so paid. (See *Comet Theatre Enterprises* v. *Cartwright,* 195 F.2d 80.) To overcome this deficiency plaintiff asserts the action here is one in assumpsit upon a promise implied by law, and to recover money paid upon mistake of fact.

■ An action upon an implied contract is discussed by the Supreme Court in *Philpott* v. *Superior Court*, 1 Cal.2d 512, 519 [36 P.2d 635, 95 A.L.R. 990], where it is said in summing up the nature of such a cause of action, "In one word the gist of this kind of action is, that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money." In the case at bar the contract is fully executed and there is no valid claim that defendant's performance was in any way deficient; the only bases alleged for recovery are collateral misrepresentations respecting a statute enacted not for the benefit of plaintiff, but for the general public when dealing with persons of plaintiff's class. (See *Houston* v. *Williams*, 53 Cal.App. 267, 271 [200 P. 55] ; *Ferguson* v. *Schuenemann*, 167 Cal.App. 2d 413 [334 P.2d 668].) ■ "There is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected." (*Comet Theatre Enterprises* v. *Cartwright, supra*, 195 F.2d 80, 83.) Any effect of defendant's fraud or misrepresentation is remote. To allow recovery here would give plaintiff the benefit of his bargain and at the same time allow return of the consideration paid. A court of equity does not sit to confer a windfall.

The cases relied on by plaintiff to establish a basis for recovery of money paid under mistake of fact involve overpayment of valid debts and complete failure of consideration in each case induced by innocent mistake of fact. Such factors are not present here. They have no bearing on the present matter and need not be considered.

The trial court construed the second amended complaint as showing the parties to be *in pari delicto* and thus left them where it found them. We agree.

Judgment affirmed.

Jefferson, J., and Ford, J.,* concurred.

---

*Assigned by Chairman of Judicial Council.