[No. B055149. Second Dist., Div. Four. Jan. 29, 1993.]

JEFF L. PREACH, Plaintiff and Appellant, v.
MONTER RAINBOW et al., Defendants and Respondents.

1444

COUNSEL

Whitman & Ransom, Michael T. McColloch and Roger B. Coven for Plaintiff and Appellant.

William M. Pfeiffer and Judith K. Herzberg as Amici Curiae on behalf of Plaintiff and Appellant.

Dudley Gray, Sr., in pro. per., for Defendants and Respondents.

OPINION

**WOODS (A. M.), P. J.**—Appellant and plaintiff Jeff L. Preach doing business as Terrace Realty Company (plaintiff), appeals from a judgment entered in favor of respondents and defendants Monter Rainbow, Gray Family Corporation and Dudley Gray, Sr. (Gray) (collectively defendants) after their motion for summary judgment was granted.

In a fifth amended complaint (the complaint), plaintiff sued defendants for breach of contract, foreclosure of equitable mortgage and fraud.[1] The gravamen of plaintiff's complaint is that defendants breached a written agreement with plaintiff pursuant to which "plaintiff was employed by the defendants, and each of them, to procure a certain tenant, namely the Home Club, for a building to be constructed on real property owned by defendant Monter [Rainbow] . . . . As compensation for such services, the defendants, and each of them, agreed to pay plaintiff the broker's commission described in the Agreement, upon the leasing by the Home Club of defendants' premises." Plaintiff contends that defendants breached the agreement by paying plaintiff $36,000 but failing and refusing to pay plaintiff a balance of $300,000 plus interest.

Defendants moved for summary judgment on the ground that the agreement was unenforceable as a result of plaintiff's agreement to pay one-third of his commission to an unlicensed person who engaged in activities with respect to the negotiations between defendants and Home Club for which a broker's license was required.

Plaintiff contends that the trial court erred in granting summary judgment because (1) plaintiff is not precluded from enforcing his agreement with defendants to recover his commission even if his agreement to pay a portion of that commission to an unlicensed person is unenforceable; (2) there were triable issues of material fact; and (3) defendants were not entitled to an award of attorney fees.

The following facts are gleaned from the record: Defendant Monter Rainbow was a California limited partnership. Defendant Gray Family Corporation was a general partner in Monter Rainbow. Defendant Gray was an officer of the Gray Family Corporation. In May of 1985, defendants owned real property located in Gardena, California (the Monter Rainbow property).

Plaintiff was a licensed real estate broker doing business as Terrace Realty Company. Ralph Singer was an attorney, but he was not a licensed real estate broker. Robert McNulty was president and chief executive officer of Home Club. Singer was McNulty's "personal attorney and friend."

Plaintiff learned from Singer that Home Club was looking for potential store sites. Plaintiff told Singer that he had spoken to the owner of the

---

[1]Defendants successfully demurred to several other causes of action pled in the complaint. In addition, defendants filed a cross-complaint to which plaintiff filed a verified answer. Subsequent to entry of judgment in favor of defendants, a stipulation was filed pursuant to which defendants agreed to refrain from proceeding with trial of their cross-complaint unless and until the summary judgment entered against plaintiff was reversed on appeal.

Monter Rainbow property regarding selling or leasing that property to Home Club. Plaintiff asked Singer to provide an introduction to Home Club in connection with the Monter Rainbow property. Because Singer had access to the "top people in the Home Club operation," plaintiff agreed to pay Singer one-third of any commission plaintiff received if Home Club leased the Monter Rainbow property, "or any other property."

Singer contacted McNulty, and told him that he and plaintiff had found a piece of property for Home Club. McNulty agreed that the Monter Rainbow property would be an ideal location for Home Club. Singer set up a meeting between representatives of Home Club and Gray.

When they first met, Singer told Gray of the arrangement whereby plaintiff would pay to Singer one-third of any commission plaintiff received if Home Club leased the property. Although Singer is an attorney, he asked Gray, who is also an attorney, whether Singer "providing an introduction created any legal problems." Gray told Singer that Singer's activities would be lawful so long as Singer "did not pursue activities for which a real estate license is required on a regular basis."

On or about May 29, 1985, Singer drove Gray and plaintiff to a meeting at Home Club's office in Fullerton. At his deposition, Singer testified that, during that drive, he told Gray everything he knew about Home Club, Home Club's finances, and Home Club's principals in response to Gray's questions. They also discussed the specifics of negotiations engaged in by plaintiff, Singer and Home Club regarding a property in San Diego, including the rental rate agreed upon in that transaction.[2]

At Home Club's offices, Singer introduced Gray to McNulty. Willard Nelson Thompson of Home Club was either present at this meeting, or at a subsequent meeting. Thompson recalled discussing the physical aspects of the property and Gray's goals in developing the property. At his deposition, Thompson testified that plaintiff, Gray, and Singer were present throughout the meeting. Singer testified that he was only present during a portion of the

---

[2]Singer contradicts his deposition testimony in a declaration submitted in support of plaintiff's opposition to defendants' motion for summary judgment (hereinafter Singer's declaration). Preach, in his declaration submitted in opposition to defendants' motion for summary judgment (hereinafter Preach's declaration), admits that Gray asked questions about the Home Club during the drive, but claims that "there was no discussion of any specific terms or other matters concerning any potential transaction regarding" the Monter Rainbow property. At his deposition, Gray recalled that these topics were discussed during lunch immediately after the meeting at Home Club. Singer denies that any such discussion took place during this lunch. Preach does not dispute that these topics were discussed after the meeting at Home Club. Thus, the only disputed fact is when and where these discussions occurred, not whether they occurred.

meeting and that he and McNulty left plaintiff and Gray with Thompson in Home Club's boardroom. At his deposition, Preach testified that he understood his role in attending this meeting was to "stand back and let Dudley Gray talk directly with McNulty and the parties." After the meeting, Gray used McNulty's telephone to set up a meeting for later that afternoon with an architect recommended by Home Club.

In between the meeting with McNulty and the meeting with the architect, Gray, Singer, and plaintiff stopped for lunch. They discussed the transaction. Gray told Singer and plaintiff that he was concerned about his own ability to finance the project. After lunch, Singer, Gray, and plaintiff met with the architect.

In a letter dated May 29, 1985, plaintiff proposed to Gray that, in the event Home Club leased space in the Monter Rainbow property, Gray would pay to Terrace Realty, prior to the commencement of the lease, a broker's commission. Several days after the meeting at Home Club, on or about June 3, 1985, Gray apparently indicated his acceptance of plaintiff's offer with certain added conditions.

On June 11, 1985, Singer met with Gray in Singer's office. Singer did not invite Gray, or know that Gray was coming. Singer understood that Gray's purpose in coming was to inform Singer of the status of the negotiations with Home Club. Gray told Singer that they were still "haggling back and forth on" the terms of the lease. Gray related what had been agreed to and that to which he intended to agree. He told Singer the areas in which they were having a problem reaching an agreement, including "Israeli inflation." Gray also consulted Singer about the rental rate being negotiated for the property and the tax effect of a future sale of the property. Singer agreed to talk to Thompson about waiving a provision for several months of free rent. Singer relayed this information to Thompson. Gray asked Singer to call Thompson "and attempt to help him [Gray] out." Singer did so.

Singer testified that he "was paving the way for Dudley [Gray] to call Thompson and letting Thompson know in effect what the concerns or what the areas of concern were and what the areas of concern were not." In his declaration, however, Singer claims that he "did no more than relay a message as to the areas that Gray wanted to discuss."

Singer testified that Gray offered him a $150,000 finder's fee at this meeting. Singer told Gray that he already had a deal with plaintiff. At his deposition, Gray admitted that he had no contractual relationship with Singer.

Also on June 11, 1985, Singer wrote to McNulty, informing him that Gray had noticed in Home Club's annual statement that Home Club leased property with rental payments based on specified percentages of gross sales, against a monthly minimum, and that Gray was "extremely interested in putting together a deal on the terms which were discussed as $6.75 net, net, net, with a fifteen year term with 3 five-year options. The only sticking point is going to be setting up some kind of a contingency to provide for runaway inflation." Singer told McNulty that he had advised Gray to contact Thompson to set up a meeting to close the deal.

Plaintiff claims that he had no knowledge of the meeting between Gray and Singer until after it had occurred. Plaintiff also claims that he did not know that Singer had telephoned Thompson at Gray's request or about Singer's June 11, 1985, letter to McNulty, until after the lawsuit was initiated.

On June 13, 1985, plaintiff wrote to Singer thanking him for bringing Home Club to plaintiff as a potential lessee of the property. In the letter, plaintiff agreed to pay to Singer one-third of plaintiff's commission if Home Club leased or purchased the Monter Rainbow property or any other property.

In a letter to Gray dated June 20, 1985, plaintiff set forth the terms pursuant to which he would receive a commission if Home Club leased space in the Monter Rainbow property. These terms are different than those set forth in plaintiff's May 29, 1985, letter to Gray. Gray added several additional terms and acknowledged his acceptance of plaintiff's proposal with the additional terms.

Upon completion of the lease agreement, defendants failed and refused to pay to plaintiff $300,000 of the commission agreed upon. Plaintiff then sued for breach of contract. Summary judgment was entered against plaintiff and this appeal ensued.

I

A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) (1) The purpose of summary judgment is to penetrate evasive language and adept pleading and to ascertain, by means of affidavits, the presence or absence of triable issues of fact. Accordingly, the function of the trial court in ruling on a motion for summary judgment is

merely to determine whether such issues of fact exist, and not to decide the merits of the issues themselves. (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46]; *Eastern Aviation Group, Inc.* v. *Airborne Express, Inc.* (1992) 6 Cal.App.4th 1448, 1451 [8 Cal.Rptr.2d 355].) ■ Code of Civil Procedure section 437c, subdivision (c) imposes an affirmative duty on the trial court to grant a motion for summary judgment in an appropriate case. (*Advanced Micro Devices, Inc.* v. *Great American Surplus Lines Ins. Co.* (1988) 199 Cal.App.3d 791, 795 [245 Cal.Rptr. 44].) " 'The reviewing court conducts a de novo examination to see whether the moving party is entitled to summary judgment as a matter of law or whether there are genuine issues of material fact.' " (*Krieger* v. *Nick Alexander Imports, Inc.* (1991) 234 Cal.App.3d 205, 211-212 [285 Cal.Rptr. 717].)

■ "[I]ssue finding rather than issue determination is said to be the pivot upon which the summary judgment law turns. [Citation.] In other words, the court inquires whether there are any triable issues of fact but refrains from weighing the evidence or making any determination of fact. [Citations.] The Supreme Court continues to admonish that summary judgment is a drastic remedy and should be used with caution. [Citation.] Because summary judgment is a drastic procedure all doubts as to the propriety of granting a motion for summary judgment should be resolved in favor of the party opposing the motion. [Citations.] ■ The moving party bears the burden of furnishing supporting documents that establish that the claims of the adverse party are entirely without merit on any legal theory. [Citation.] In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed . . . . [Citations.] All reasonable inferences are drawn in favor of the party opposing the summary judgment. [Citation.] But evidence may be so lacking in probative value that it fails to raise any triable issue. To put the matter otherwise, the issue of fact becomes one of law and loses its triable character if the undisputed facts leave no room for a reasonable difference of opinion. [Citation.]" (*Advanced Micro Devices, Inc.* v. *Great American Surplus Lines Ins. Co., supra,* 199 Cal.App.3d at pp. 795-796, internal quotation marks omitted.)

■ "A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. [Citation.] To succeed, the defendant must conclusively negate a necessary element of plaintiff's case, and demonstrate that under no hypothesis is there a material issue of fact that requires the process of trial. [Citation.]" (*Molko* v. *Holy Spirit Assn., supra,* 46 Cal.3d at p. 1107; see also *Eastern Aviation Group, Inc.* v. *Airborne Express, Inc., supra,* 6 Cal.App.4th at p. 1451.)

■ A party cannot create an issue of fact by a declaration which contradicts his prior pleadings. (*Brown* v. *City of Fremont* (1977) 75 Cal.App.3d 141, 146 [142 Cal.Rptr. 46].) In determining whether any triable issue of material fact exists, the trial court may, in its discretion, give great weight to admissions made in deposition and disregard contradictory and self-serving affidavits of the party. (*Nunez* v. *R'Bibo* (1989) 211 Cal.App.3d 559, 563 [260 Cal.Rptr. 1]; see also *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 21-22 [112 Cal.Rptr. 786, 520 P.2d 10]; *Advanced Micro Devices, Inc.* v. *Great American Surplus Lines Ins. Co., supra,* 199 Cal.App.3d at p. 800; *Leasman* v. *Beech Aircraft Corp.* (1975) 48 Cal.App.3d 376, 382 [121 Cal.Rptr. 768].) "In reviewing motions for summary judgment, the courts have long tended to treat affidavits repudiating previous testimony as irrelevant, inadmissible, or evasive. [Citation.]" (*Advanced Micro Devices, Inc.* v. *Great American Surplus Lines Ins. Co., supra,* 199 Cal.App.3d at p. 800.) The rule is equally applicable to a conflict between the affidavit and the deposition testimony of a single witness. Accordingly, to the extent Singer's affidavit contradicts his deposition testimony, we shall disregard it.

As noted by the trial court, the instant case is unusual and no California authority is directly on point. As our discussion will explain, our de novo review persuades us that material issues of fact exist which preclude summary judgment.

## II

■ The trial court correctly concluded that, as a matter of law, Singer engaged in activities for which a real estate license is required and was not protected by the so-called "finder's exception" to the licensing requirements of the Business and Professions Code. We agree with that conclusion.

A real estate broker is defined as, among other things, "a person who, for a compensation or in expectation of a compensation, regardless of the form or time of payment, does or negotiates to do one or more of the following acts for another or others: . . . (b) Leases or rents or offers to lease or rent, or places for rent, or solicits listings of places for rent, or solicits for prospective tenants . . . ." (Bus. & Prof. Code, § 10131, subd. (b); *Zappas* v. *King Williams Press, Inc.* (1970) 10 Cal.App.3d 768, 772 [89 Cal.Rptr. 307].)

"It is unlawful for any person to engage in the business, act in the capacity of, advertise or assume to act as a real estate broker or a real estate salesman within this state without first obtaining a real estate license from the department." (Bus. & Prof. Code, § 10130.)

Although a real estate broker may not employ or compensate, directly or indirectly, an unlicensed person to perform acts for which a license is required (Bus. & Prof. Code, § 10137), "[t]he rule is well established that one who simply finds and introduces a prospective lessee to a person who wishes to lease his property need not be licensed by the state in order to recover a commission for his services. Such an intermediary is protected by the so-called 'finder's' exception to the real estate licensing act." (*Zappas* v. *King Williams Press, Inc., supra,* 10 Cal.App.3d 768, 772.)

The line between brokers and finders is based on whether the person in question has engaged in any negotiating to consummate the transaction. (*Zappas* v. *King Williams Press, Inc., supra,* 10 Cal.App.3d at p. 773.) "The finder is a person whose employment is limited to bringing the parties together so that they may negotiate their own contract, and the distinction between the finder and the broker frequently turns upon whether the intermediary has been invested with authority or duties beyond merely bringing the parties together, usually the authority to participate in negotiations." (*Tyrone* v. *Kelley* (1973) 9 Cal.3d 1, 9 [106 Cal.Rptr. 761, 507 P.2d 65].) "Before the finder's exception may apply, it must appear that the activity is limited to arranging an introduction [between the parties] . . . [citation], and the services performed in bringing the parties together cannot involve any role in negotiating the price or any of the other terms of the transaction. [Citation.] If the broker takes any part in the negotiations, no matter how slight, he is not a middleman but a broker. [Citation.]" (*Rees* v. *Department of Real Estate* (1977) 76 Cal.App.3d 286, 295 [142 Cal.Rptr. 789], internal quotation marks omitted.)

Whether a person acted as a finder or as a broker is a question of fact, requiring examination of his conduct after the introduction of the principals to the transaction. (*Tenzer* v. *Superscope, Inc.* (1985) 39 Cal.3d 18, 31 [216 Cal.Rptr. 130, 702 P.2d 212] [summary judgment reversed where record did not permit adjudication of this factual question].)

In the present case, Singer's June 11, 1985, meeting with Gray and Singer's subsequent communications with Thompson and McNulty are undisputed facts that leave no room for a reasonable difference of opinion: Singer continued to communicate with and advise Gray, McNulty, and Thompson about the substance of their negotiations, after having introduced them. Singer's participation in the negotiations was conduct which constitutes activities beyond the permissible scope of a finder. (See, e.g., *Lyons* v. *Stevenson* (1977) 65 Cal.App.3d 595, 606 [135 Cal.Rptr. 457] [plaintiff was a mere finder where plaintiff had no contact with buyer or seller after he brought them together except to inquire about his commission]; *Pawlak* v.

*Cox* (1957) 148 Cal.App.2d 294, 298 [306 P.2d 619] [plaintiffs' advice to sellers as to negotiations rendered them more than mere finders].)

Plaintiff's reliance on *Freeman* v. *Jergins* (1954) 125 Cal.App.2d 536 [271 P.2d 210] for the proposition that Singer's activities were within the scope of a finder is misplaced. In *Freeman*, plaintiff, who was not a licensed broker, and defendants entered into an oral agreement pursuant to which defendants agreed that, if a sale of the stock of the Jergins Oil Company was effected through the efforts of John W. Lee or Smith, Barney & Co., they would pay plaintiff for his services in finding and arranging an introduction to Lee. (*Id.*, at pp. 539-540.) Although the Jergins Oil Company was eventually sold to Lehman Brothers of New York as a result of the efforts of Lee and Smith, Barney & Co., defendants refused to pay plaintiff. (*Ibid.*) The reviewing court rejected defendants' contention that the agreement to pay plaintiff was unenforceable because plaintiff was seeking compensation for services for which he was required to be licensed. (125 Cal.App.2d at p. 546.) The principals had handled all of the negotiations with Lee and Smith, Barney & Co., and plaintiff was never present at any of these meetings. "There was abundant evidence that plaintiff agreed to do and did nothing to bring about a sale except arrange an introduction." (*Id.*, at p. 548.)

The present case is distinguishable from *Freeman* v. *Jergins, supra.* Here, Singer's consultations with Gray, McNulty and Thompson concerning the substance of their negotiations exceeded the scope of activity in which a finder is permitted to engage. In this respect, the case before us is analogous to *Hasekian* v. *Krotz* (1968) 268 Cal.App.2d 311 [74 Cal.Rptr. 410]. In *Hasekian*, Krotz, a licensed real estate broker, was authorized by the owners of certain real property to find a buyer for the property. (*Id.*, at p. 313.) Hasekian was not a licensed real estate broker although his associate, Clever, was licensed. Krotz entered into an agreement with Hasekian and Clever pursuant to which Krotz agreed to pay Hasekian and Clever a commission and finder's fee in exchange for Hasekian's introduction of Krotz to Handy, if the property was sold to Handy or to one of Handy's associates. (*Ibid.*) Clever did not participate in any phase of the transaction. Hasekian did not meet the owners of the property until after escrow closed and did not discuss the deal with Handy until after escrow closed. However, after he introduced Krotz to Handy, Hasekian assisted Handy in "gathering desired information concerning the acreage." (268 Cal.App.2d at pp. 314, 322-323.) The appellate court found this evidence supported a finding that Hasekian functioned as a broker. (268 Cal.App.2d at p. 323.)

Like the plaintiff in *Hasekian*, Singer functioned as a broker, not a finder. The activities in which he engaged went well beyond the scope of those permissible as a finder.

## III

The trial court concluded that defendants' promise to pay plaintiff a broker's commission was unenforceable because plaintiff's right to compensation was based on activities unlawfully performed by Singer. The trial court found *Hahn* v. *Hauptman* (1930) 107 Cal.App. 739 [291 P. 418], controlling on this issue. In *Hahn*, the plaintiff, a licensed real estate broker, entered into an exclusive listing agreement pursuant to which he would receive a commission if, within 30 days of the termination of the listing, a sale of the property was made to a person with whom he negotiated. The plaintiff broker in *Hahn* did not personally negotiate with the purchaser of the property; instead, the plaintiff's unlicensed employee exhibited the property and talked about it with the purchaser. The reviewing court found that the plaintiff's right to compensation depended upon his having negotiated with the purchaser and that the acts of the plaintiff's employee did not satisfy this requirement because negotiations by an unlicensed person were "expressly forbidden by law." (*Id.*, at pp. 740-741.) The *Hahn* court concluded that one may not recover upon a contract for services rendered in the commission of acts which are malum prohibitum, "this upon the ground of an enlightened public policy." (107 Cal.App. at p. 740.)

Plaintiff contends that the present case is distinguishable from *Hahn* v. *Hauptman, supra,* 107 Cal.App. 739. He argues that here, defendants' obligation to pay plaintiff a commission was predicated only upon Home Club leasing the Monter Rainbow property, and did not require plaintiff to perform any activities for which a license is required. We disagree.

The absence of any description in either the May 29, 1985 or June 20, 1985, letter, of what plaintiff promised to do in exchange for defendants' promise to pay him a commission, is not determinative of the issue. In his deposition, plaintiff admitted that he was obligated to perform certain acts in exchange for defendants' promise to pay him a commission. For example, plaintiff expressed his understanding that, as consideration for defendants' promise to pay him a commission, plaintiff was obligated to "help Dudley Gray with any and all information that I could possibly give him and help him in securing a good lease." These are activities for which a license is required. (Bus. & Prof. Code, § 10131, subd. (b); *Hasekian* v. *Krotz, supra,* 268 Cal.App.2d at pp. 314, 322-323.)

The record before us contains no evidence that plaintiff did anything to help Gray obtain "a good lease." Plaintiff admitted that he had no information to give Gray and it is unclear what, if any, contribution he made.

In contrast, it is undisputed that Singer performed all of the activities previously set forth, which resulted in the lease of the property to Home

Club. It was on this basis that the trial court concluded that under the reasoning of the court in *Hahn* v. *Hauptman, supra,* 107 Cal.App. 739, plaintiff was not entitled to enforce the agreement.

We conclude that a material issue of fact remains to be resolved, however, as to whether or to what extent the plaintiff performed the obligations upon which his right to compensation depends.

IV

Plaintiff contends that even if Singer's activities exceeded those permissible as a finder, such activities are not relevant to the enforceability of defendants' agreement to pay a commission to plaintiff. In support of this contention, plaintiff argues that his agreement with Singer was separate from his agreement with defendants. Plaintiff cannot insulate his agreement with defendants from the Business and Professions Code's proscription against brokers sharing their commissions with unlicensed persons who perform acts for which a license is required by the artifice of making one agreement with Singer and another with defendants. There would be no deterrent to a real estate broker employing unlicensed persons if the only consequence was that the unlicensed person would not be paid by the broker but the broker would receive his or her full fee.

The purpose of the real estate licensing statutes is to protect the public from the perils incident to dealing with incompetent or untrustworthy real estate practitioners. (*All Points Traders, Inc.* v. *Barrington Associates* (1989) 211 Cal.App.3d 723, 729 [259 Cal.Rptr. 780]; *Schantz* v. *Ellsworth* (1971) 19 Cal.App.3d 289, 292-293 [96 Cal.Rptr. 783].) This purpose would not be served by adopting the theory of plaintiff and the California Association of Realtors that regardless of the unenforceability of his contract with Singer, plaintiff's contract with defendants was unaffected.

Although no California case is directly on point, other jurisdictions have decided cases on facts similar to those at issue here and declined to enforce the broker's fee agreement as well as the finder's fee agreement. (See, e.g., *Frieman* v. *Greaves* (1947) 80 OhioApp. 341 [36 Ohio Ops. 39, 74 N.E.2d 860, 864] [where evidence shows that plaintiff's commission is to be divided with an unlicensed person who performed broker's services, an instructed verdict in favor of defendants was appropriate]; *Kennedy* v. *Huntington Hartford* (1968) 31 A.D.2d 616 [295 N.Y.S.2d 751] [where plaintiff admitted that he had arranged to share his commission with other individuals who acted as brokers although they were not licensed to do so, public policy and New York's real property law barred plaintiff from recovery]; but see *Foley*

v. *Hassey* (1939) 55 Wyo. 24 [95 P.2d 85, 89-90] [fact that licensed broker agreed to share his commission with unlicensed person is of no consequence where agreement only required broker to find purchaser for property, not to negotiate].)

The Business and Professions Code section 10137.1 provides that a partnership may perform acts for which a license is required, "provided every partner through whom the partnership so acts is a licensed real estate broker." According to the commentators Miller and Starr, "[w]hen the licensed services are performed by two or more persons as a joint venture or partnership, and one of them is not duly licensed, the entire transaction is void and unenforceable, and *neither* person can collect compensation for the services." (2 Miller & Starr, Cal. Real Estate (2d ed. 1989) § 4.15, p. 225; fn. omitted, italics in original.) In support of this proposition, Miller and Starr cite *Haas* v. *Greenwald* (1925) 196 Cal. 236, 242-244 [237 P. 38, 59 A.L.R. 1493], and *Wise* v. *Radis* (1925) 74 Cal.App. 765 [242 P. 90]. Plaintiff contends that these cases are inapposite.

Plaintiff's effort to distinguish *Wise* v. *Radis, supra,* 74 Cal.App. 765, by contending that Singer's activities did not constitute part of the consideration for the contract is unavailing. In *Wise,* both Wise and Radis were licensed real estate brokers. Each maintained his own office. They entered into an oral agreement pursuant to which they were to equally divide all profits and losses made or incurred by them in working together to negotiate the purchase and sale of real properties. (*Id.,* at p. 768.) Between the time one such property was listed with them, and the time the property was sold, Wise neglected to renew his expired real estate broker's license. (*Id.,* at p. 769.) The buyer paid the entire commission to Radis, who refused to pay any part of it to Wise. (*Id.,* at pp. 768-769.)

The *Wise* court denied the unlicensed Wise relief holding that "The performance of services jointly by both respondent and appellant constituted the consideration for the commission which the owner of the property agreed to pay. If any part of this consideration was illegal the entire contract was void. (Civ. Code, [§] 1608.) . . . . [*T*]*he acts jointly performed by appellant and respondent subsequent to that date [the expiration of Wise's license]— acts which culminated in the sale of the property through their joint efforts and which constituted the consideration for the commission agreed to be paid to them—were illegal, and no recovery of the commission could have been enforced by the parties to this action against the owner of the property.* (See

*Haas* v. *Greenwald, supra* [196 Cal. 236]; . . .)" (*Wise* v. *Radis, supra*, 74 Cal.App. at p. 774, italics added.)[3]

Respondent has at all times contended that plaintiff and Singer were engaged in a joint venture. Plaintiff is correct, however, in his contention that the record before this court does not permit a determination, as a matter of law, that plaintiff and Singer engaged in activities as joint venturers, for which a license was required. ■ Generally, whether a joint venture actually exists depends on the intention of the parties. The conduct of the parties may create a joint venture despite an express declaration to the contrary, however. Where the evidence is in dispute, the existence or nonexistence of a joint venture is a question of fact to be decided at trial. (*April Enterprises, Inc.* v. *KTTV* (1983) 147 Cal.App.3d 805, 819-820 [195 Cal.Rptr. 421].)

## V

■ Plaintiff claims that he did not know, until after the lawsuit was commenced, that Singer had engaged in activities which exceded the activities which can be legally engaged in by a finder. The record before us does not establish as a matter of law that plaintiff authorized or knew of these activities by Singer.

If it is established that plaintiff performed none of the duties required under the contract, then his commission will be denied for failure of consideration. (*Hahn* v. *Hauptman, supra*, 107 Cal.App. 739 [previously relied on by the trial court].)

Alternatively, if defendants establish the existence of a joint venture between plaintiff and Singer, knowledge of Singer's unlawful activities would be imputed to plaintiff. Under such circumstances, plaintiff would be unable to enforce defendants' promise to pay him a commission. (See *Wise* v. *Radis, supra*, 74 Cal. App. at p. 774.) Alternatively, if defendants are unable to establish the existence of a joint venture, but are able to persuade

---

[3]Also without merit is plaintiff's contention that the case at bar is distinguishable from *Haas* v. *Greenwald, supra*, 196 Cal. 236, because the plaintiff in *Haas* was denied recovery *only* because the contract sued upon specifically provided for the services of an unlicensed person. *Haas* was an appeal from a demurrer. Because of the procedural posture of the case, the *Haas* court focused only on whether the allegations of the complaint stated a cause of action. Here, we are not limited to the allegations of the complaint, we review the evidence.

" '[W]hen the evidence shows that the plaintiff in substance seeks to enforce an illegal contract or recover compensation for an illegal act, the court has both the power and duty to ascertain the true facts in order that it may not unwittingly lend its assistance to the consummation or encouragement of what public policy forbids.' " (*Estate of Prieto* (1966) 243 Cal.App.2d 79, 85-86 [52 Cal.Rptr. 80].)

the trier of fact that plaintiff knew of Singer's unlawful activities, defendants' agreement to pay plaintiff a commission would be unenforceable for the reasons stated.

If, however, the trier of fact concludes that plaintiff was *justifiably* ignorant of Singer's unlawful activities (*Richardson* v. *Roberts* (1962) 210 Cal.App.2d 603, 607 [26 Cal.Rptr. 829]; *Nevcal Enterprises* v. *Cal-Neva Lodge, Inc.* (1963) 217 Cal.App.2d 799, 806 [32 Cal.Rptr. 106]), then he would not be in pari delicto and no public policy would be furthered by denying plaintiff the relief he seeks in which case the commission agreement should be upheld. (See, e.g., *Nevecal Enterprises* v. *Cal-Neva Lodge, Inc.*, *supra*, at p. 806; *Holland* v. *Morgan & Peacock Properties* (1959) 168 Cal.App.2d 206, 210-211 [335 P.2d 769]; *Norwood* v. *Judd* (1949) 93 Cal.App.2d 276, 283 [209 P.2d 24]; but see, *Richardson* v. *Roberts*, *supra*, at p. 607 [a licensed broker has a duty to verify that a person with whom he agrees to share a commission is properly licensed and is not entitled to rely upon that person's oral representation that other exceptions in the Real Estate Broker's Act have been met].)

Each of these possible dispositions raise issues to be determined by the trier of fact, and cannot be determined on this record as a matter of law. We therefore reverse the summary judgment and remand the matter to the trial court.[4]

The judgment is reversed. Each side shall bear its own costs and attorney fees on appeal. (Cal. Rules of Court, rule 26.)

Epstein, J., and Taylor, J.,* concurred.

---

[4]The matter having been remanded, we do not address the issue of attorney fees raised by appellant.

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.