Filed 11/15/13  Barber v. Cal. Dept. of Corrections CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| PATRICK BARBER, | |
| Plaintiff and Appellant, | E053758 |
| v. | (Super.Ct.No. SCVSS-129378) |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  W. Robert Fawke, Judge.  Affirmed.

Patrick Barber, in pro. per., for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Alicia M. B. Fowler, Assistant Attorney General, Jerald L. Mosley and Mark Schreiber, Deputy Attorneys General, for Defendants and Respondents.

1

Patrick Barber, plaintiff and appellant (Barber), appeals from the judgment entered against him and in favor of defendant and respondent California Youth Authority (CYA) following a bench trial on Barber's complaint for damages based on unlawful retaliation in violation of Labor Code section 1102.5. Barber, who represents himself in this appeal, contends the trial court committed various errors in finding against him on his unlawful retaliation claim. We conclude Barber's claims are meritless. Therefore, we will affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Labor Code section 1102.5 makes it unlawful for an employer to "retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." (Lab. Code, § 1102.5, subd. (b).)

According to the allegations of his fourth amended complaint, which is the operative pleading in this action, and his trial testimony, Barber had been employed since 1998 by CYA as a youth correctional counselor at Heman G. Stark Correctional Facility (Stark). Defendant Xavier Ruiz (Ruiz) was employed by CYA "in a Manager capacity over [Barber]." In March 2001, Barber submitted a formal complaint to the Office of the Inspector General (OIG) in which he asserted that other employees at Stark had destroyed a videotape that showed a November 1999 assault on Barber by one of the wards at Stark, and the employees also had given false testimony about that event in connection with "adverse action" taken against Barber as a result of the November 1999 event. Barber

2

alleged that Ruiz, in turn, wrongfully disseminated Barber's OIG complaint by posting it on the "'Read and Initial'" board at Stark.

Barber alleged that in February 2003, Ruiz initiated a formal investigation of an incident in which Barber purportedly used a chokehold on a ward. In February 2004 Ruiz engaged in the "adverse action" of dismissing Barber from employment with CYA effective February 2, 2004, apparently as a result of the chokehold incident in 2003. Barber appealed to the State Personnel Board. While Barber's appeal was pending, Ruiz again terminated Barber's employment in June 2004 after investigating an incident that occurred in May 2003 in which Barber allegedly directed foul language at CYA counselor Manns. Barber alleged in response to Ruiz's charge that CYA had not followed the procedure specified in the Institutions and Camps Manual for responding to a critical incident referral "from the staff assault that [Barber] sustained 2 days earlier." Barber appealed this second dismissal asserting, because he had been fired in February 2004, CYA could not terminate his employment a second time in June 2004. The State Personnel Board agreed with Barber and following a hearing in August 2004 declared the June 2004 termination of Barber's employment legally void.

Barber asserted in his complaint, "Retaliatory animus can be seen from the fact that [Barber] was terminated from employment in February and appealed the decision through the [State Personnel Board], which overturned the dismissal. While [Barber] was litigating the dismissal, [Barber] was dismissed again in retaliation for having engaged in protected activity, namely appealing [Barber's] dismissal through the [State Personnel Board] and complaining about improper governmental activity."

3

The State Personnel Board overturned Ruiz's February 2004 decision to terminate Barber's employment and instead ordered that he be suspended for 45 days. Barber went back to work in December 2004.[1]

Based on the foregoing facts, none of which are in dispute, Barber alleged CYA and Ruiz terminated his employment in February 2004 in retaliation for Barber's "'Whistle Blowing,' that is, for reporting improper governmental activities" in violation of Labor Code section 1102.5. Ruiz eventually filed a motion for summary judgment; the trial court granted that motion. Barber did not appeal the summary judgment entered against him and in favor of Ruiz.

Barber's cause of action against CYA for retaliation in violation of Labor Code section 1102.5 was the only claim that remained after the trial court granted Ruiz's summary judgment motion. Barber and CYA waived a jury, and a bench trial on that remaining cause of action began on August 17, 2010. At the conclusion of the presentation of evidence, the parties submitted written closing arguments.

In February 2011, the trial court issued a proposed statement of decision finding in favor of CYA. Barber submitted objections to the proposed statement of decision. On April 20, 2011, the trial court issued a final statement of decision, again finding in favor of CYA and against Barber on his retaliation claim. The trial court entered judgment, accordingly, on that same date.

---

[1] It is unclear from the record in this appeal whether Barber was a CYA employee at the time of trial.

## DISCUSSION

Barber raises six purported claims of error in this appeal, the first four of which are directed at the trial court's statement of decision. His fifth claim is the trial court was biased against him, as evidenced by observations about his demeanor in court, which the trial court included in the proposed statement of decision. Barber's final claim is the trial court abused its discretion by not affording him sufficient time to prepare for trial after his attorney of record was arrested and disbarred. We conclude his claims are meritless. Therefore, we will affirm.

## 1.

## ABILITY TO PREPARE FOR TRIAL

Barber contends the trial court did not afford his new attorney sufficient time to prepare for trial. Neither he nor his new attorney asked the trial court for a continuance, nor did either of them at any time say they were not ready for trial. Because he did not raise this issue in the trial court, Barber may not raise it on appeal for the simple reason that the trial court was not given an opportunity to address and resolve the issue. (See *Damiani v. Albert* (1957) 48 Cal.2d 15, 18 ["points not urged in the trial court may not be urged for the first time on appeal"].)

## 2.

## ADEQUACY OF THE STATEMENT OF DECISION

Barber claims the trial court's statement of decision is incorrect, relies on hearsay evidence, and contains numerous "factual and reasoning errors." We will not address the substance of his claims because although he objected to the trial court's first, or proposed, statement of decision, Barber did not object to the trial court's final statement of decision. More importantly, resolution of this appeal ultimately depends on whether Barber's evidence establishes a prima facie case of retaliation. Because the parties do not dispute the evidence presented in the trial court, we independently review that evidence to determine whether it comports with the requirements of Labor Code section 1102.5. (*Preach v. Monter Rainbow* (1993) 12 Cal.App.4th 1441, 1450 [An "issue of fact becomes one of law . . . if the undisputed facts leave no room for a reasonable difference of opinion"].)

"Labor Code section 1102.5, subdivision (b), 'California's general whistleblower statute' [citation] . . . provides: 'An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.' 'This provision reflects the broad public policy interest in encouraging workplace whistle-blowers to report unlawful acts without fearing retaliation.' [Citation.] To establish a prima facie case of retaliation, the plaintiff 'must show (1) she engaged in a protected activity, (2) her employer subjected her to an adverse employment action, and

6

(3) there is a causal link between the two.' [Citation.]" (*McVeigh v. Recology San Francisco* (2013) 213 Cal.App.4th 443, 468.)

The parties did not address each element of Barber's whistleblower claim at trial. In their respective written closing arguments, both Barber and CYA focused on whether Ruiz's actions against Barber were adverse employment actions or retaliatory, i.e., whether there was a causal connection between the adverse employment action and Barber's whistleblowing. The parties did not discuss whether Barber had engaged in whistleblowing. Consequently, the trial court did not address in its statement of decision whether Barber engaged in protected activity. Instead, like the parties, the trial court found that Barber did not prove CYA, in the guise of Ruiz, had retaliated against Barber. The parties effectively assumed in the trial court, as they do in this appeal that Barber engaged in protected whistleblowing activity. Despite the focus in the court below, Barber did not present any evidence to prove he engaged in protected activity.

"An employee engages in protected activity [under Labor Code section 1102.5, subdivision (b)] when [the employee] discloses to a governmental agency '"reasonably based suspicions" of illegal activity.'" (*Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 138.) Under Labor Code section 1102.5, subdivision (e) a report of reasonably suspected illegal activity made by an employee of a governmental agency to his or her employer constitutes a disclosure to a government or law enforcement agency for purposes of subdivision (b).

7

The evidence Barber presented at trial does not establish that he engaged in protected activity, i.e., that he disclosed reasonably suspected illegal activity to his employer or any other governmental agency or entity. Barber's testimony, as recapped in his written closing argument, shows he made many complaints, first to his employer, and next to the OIG, about how he was being treated at Stark, not only by other Stark employees, but also by Ruiz who had subjected him to repeated investigations about his work-related conduct. According to his own description, set out in his written closing argument, Barber's disclosures were about "misconduct" he claimed CYA had committed in its treatment of him as an employee. Although Barber recounted the purported misconduct at length in his trial testimony and his written closing argument, he did not identify any state or federal law, rule, or regulation that Ruiz or any other CYA employee violated, and that he in turn had reported in a protected disclosure.

Barber did not identify in the trial court, nor does he do so here, the particular disclosures he contends constitute the protected activity. Barber's three complaints to OIG are the only evidence that arguably come within the category of protected disclosures. According to his testimony at trial, Barber filed his first OIG complaint in January 2000 in which he complained that he had been subjected to two separate investigations for each of three work-related incidents, for a total of six investigations.[2] Barber testified that in January 2000 he also filed a complaint with the Equal Employment Opportunity Commission, and two women interviewed him about that

---

[2] Barber did not introduce a copy of the January 2000 OIG complaint as evidence at trial.

complaint. The outcome was that Barber failed to establish an EEOC claim. According to Barber, the two interviewers asked, "'Mr. Barber, you are white, you're a male, and you're highly-[*sic*]educated. What are you complaining about?'"

Barber submitted a second letter to OIG on March 7, 2001, a copy of which was introduced as Exhibit 3 at trial. In that letter, Barber again complained about how he was being treated at work. Barber also accused a fellow employee of destroying a videotape that he contends was evidence of a 1999 incident at work for which Barber was subjected to discipline. It is apparent from his written complaint that a copy of the videotape existed because Barber stated in the complaint that he watched the videotape on March 5, 2001, two days before writing to OIG. Moreover, to the extent Barber complained to OIG that destruction of the videotape constituted a violation of Penal Code section 135, which prohibits the destruction of evidence, he clearly states the videotape was not destroyed until sometime after the district attorney's office had rejected the case.

Barber filed a third and final complaint with OIG in September 2001. In that letter, Barber claimed his privacy had been violated because someone at Stark had disclosed the fact that he had filed a complaint with OIG. The disclosure occurred when OIG's August 14, 2001, memorandum addressed to the deputy director of CYA about its investigation of Barber's previous complaints was included with other material circulated to Stark lieutenants and sergeants on what Barber referred to as the "read and initial" clipboard. Barber asserted in his OIG complaint that disclosure of the memorandum

9

violated Penal Code section 6128, subdivision (c). That section refers to OIG's duty not to disclose information;[3] it does not apply to any other person or entity.[4]

In short, Barber's activity involved complaints about internal personnel matters between himself, other employees, and/or his employer. Those complaints are not protected under Labor Code section 1102.5, subdivision (b), which prohibits retaliation for disclosures of suspected illegal activity, i.e., the violation of a state or federal statute, rule, or regulation, to government or law enforcement agencies. Barber did not identify in the trial court, nor does he do so in this appeal, any statute, rule, or regulation the violation of which he contends was the subject of any of his complaints. Absent such evidence, Barber failed to establish a prima facie case against defendants. Therefore, the

---

[3] Penal Code section 6128 provides as follows: "(a) The Office of the Inspector General may receive communications from any individual, including those employed by any department, board, or authority who believes he or she may have information that may describe an improper governmental activity, as that term is defined in subdivision (c) of Section 8547.2 of the Government Code. It is not the purpose of these communications to redress any single disciplinary action or grievance that may routinely occur. [¶] (b) In order to properly respond to any allegation of improper governmental activity, the Inspector General shall establish a toll-free public telephone number for the purpose of identifying any alleged wrongdoing by an employee of the Department of Corrections and Rehabilitation. This telephone number shall be posted by the department in clear view of all employees and the public. When requested pursuant to Section 6126, the Inspector General shall initiate a review of any alleged improper governmental activity. [¶] (c) All identifying information, and any personal papers or correspondence from any person who initiated the review shall not be disclosed, except in those cases where the Inspector General determines that disclosure of the information is necessary in the interests of justice."

[4] Moreover, the trial court found in the statement of decision that disclosure of the OIG memorandum had been inadvert. That finding is supported by Ruiz's testimony at trial and by evidence that Ruiz immediately recalled all copies of the "read and initial" packet when he learned the memorandum was included as part of that packet.

10

trial court correctly found in favor of defendant CYA, even if it relied on different reasons than those we cite in this appeal.[5]

## DISPOSITION

The judgment is affirmed.  Respondent to recover its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER _____
Acting P. J.

We concur:


KING _____
J.


MILLER _____
J.

---

[5]  Because we affirm the judgment on different grounds than the trial court relied on, we will not address Barber's claim that the trial court was biased against him. Although we do not agree with his assertion, it is irrelevant because Barber's evidence, as a matter of law, fails to establish a prima facie case of retaliation in violation of the Labor Code.